FRIESE, Respondent, v. GULBRANDSON et al., Appellants
(8 N. W.2d 438.)

(File No. 8549.   Opinion filed March 8, 1943.)
Rehearing Denied May 22, 1943.

. **A. M. Lystad,** of Minneapolis, Minn., and **Davenport, Evans, & Hurwitz,** of Sioux Falls, for Appellants.

**H. A. Doyle, Frank Biegelmeier,** and **Ernest A. Crockett,** all of Yankton, for Respondent.

SMITH, J. ■ This action, which arose out of a collision of two automobiles at a right angle intersection of two county highways, resulted in a verdict and judgment for plaintiff. The case was submitted to the jury under Ch. 160, Session Laws 1941, commonly spoken of as the comparative negligence statute. The question ultimately to be answered is whether plaintiff was guilty of more than slight contributory negligence. We assume the negligence of defendant Gulbrandson and state the facts in the light most favorable to plaintiff.

The collision occurred at about 9:30 A. M. on September 12, 1941. The day was bright and clear, and the gravelled surface of the highways was dry and smooth. The intersection was of an enlarged type and so engineered as to provide separate and distinct curved traffic lanes for the safety and convenience of those desiring to make right or left hand turns. Plaintiff approached from the east and defendant Gulbrandson from the south. As plaintiff drove along from the east, he was traveling at forty miles per hour and was maintaining a general over-all lookout for

traffic. However, he was prevented from observing the traffic along the course of the south road because of an intervening corn field bounded by high weeds. When at a distance estimated as about one hundred fifty to one hundred seventy-five feet from the exact center of the intersection, he focused his eyes on the south road and saw no traffic. From that position he could see past the mask of corn and weeds along the course of the south road a distance of little more than one hundred feet from the intersectional center. Thereupon he focused his attention on the north road and discovered no traffic. By this time his speed had been reduced to between thirty and thirty-five miles per hour. When sixty feet from the exact center of the intersection he discovered Gulbrandson one hundred feet to the south thereof approaching at a speed of sixty miles per hour. Thereupon plaintiff applied the full force of his four wheel brakes. He expressed the opinion that he had almost succeeded in bringing his car to a standstill by the time the inside front wheels of the cars collided at the approximate center of the intersection. Defendants' car came to rest at a point ninety-three feet directly northwest of the center of the intersection. It lay on its side facing north of east astride the line separating the field from the north highway. Plaintiff's car came to rest within the intersection at a point halfway between the center thereof and the position of defendants' car. It was in an upright position facing south west.

By Ch. 187, Laws of 1941, repealing SDC 44.0303, it is provided:

"Section 1. (a) It shall be unlawful for any person to drive a vehicle on a highway of this State at a speed greater than is reasonable and prudent under the conditions then existing or at a speed in excess of those fixed by this statute or provided by the State Highway Commission."

"(f) Where no special hazard exists on any section of the highway outside of a municipality which section is not zoned and posted as hereinbefore provided, the following speeds shall be lawful; but any speed in excess of said limits

shall be unlawful and shall be prima facie evidence that the speed is not reasonable or prudent;"

"(4) Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection;"

"It shall be prima facie unlawful for any person to exceed any of the foregoing speed limitations, *  *  *."

These quoted provisions must be read in connection with certain definitions contained in SDC 44.0301. That section defines "highway" as "every way or place of whatever nature open to the use of the public, as a. matter of right, for purposes of vehicular travel *  *  *" and an "intersection" as "the area embraced within the prolongation of the lateral curb lines or, if none, then of the lateral boundary lines of two or more highways which join one another at an angle, whether or not one such highway crosses the other; *  *  *."

These provisions were submitted to the jury by the trial court's instructions in the words of the statutes as abstract propositions of law. Through exceptions to the instruction given, by alternative requests, and by their specifications of the particulars wherein the evidence is insufficient to support the verdict made in connection with a motion for new trial, and by appropriate assignments of error predicated upon the rulings below, defendants assert that, when the evidence is viewed in the light of a proper application of these statutes to the physical facts, it becomes manifest that plaintiff was guilty of contributory negligence as a matter of law in traveling at a speed in excess of fifteen miles an hour when approaching within fifty feet and in traversing an intersection when his view of the traffic on the south road was obstructed. The solution of this prob-

lem turns upon the sound construction and proper application of these provisions. As we view the record, if a proper application of these statutes marks off an intersection sixty-six feet square, the evidence presented a jury question as to whether plaintiff's view was obstructed as he advanced within fifty feet of the intersection. On the other hand, if the enlarged area, presently to be described, constitutes the intersection, the evidence conclusively establishes that plaintiff's view was obstructed as he entered the statutory fifty-foot zone.

A more detailed picture of the scene of the collision is essential to an understanding of our problem. The two highways were of a normal width of sixty-six feet. Although their entire width was "open to the use of the public, as a matter of right," a graded gravelled roadway approximately twenty-four feet wide was provided for the convenience of traffic. To improve the safety factor at the intersection additional right-of-way has been acquired and curved roadways along which traffic may turn to the right or left have been provided. Thus as a vehicle approaching the intersection from any one of the four directions reaches a point about one hundred twenty feet from the exact center of this intersectional space, three roadways become available—one straight through and the other two along gradual cures to the right and left respectively. The entire area is graded to the same approximate level, but the described roadways are defined and separated by four small triangular grass or weed plots. The plots are not curbed and are bounded on the insides by the roads extending straight through and on their outward sides by the curved roadways. These triangular spaces are not closed to traffic and from photographs in the record it is apparent that some vehicles actually drive through or over them. As heretofore indicated, a field of high corn bounded by high weeds was located southeast of the intersectional space which prevented a traveler on the east road from observing traffic on the south road until close upon the intersection.

■■ After mature reflection, we are not left in doubt as to either the proper construction, or sound application of these provisions of statute to the physical situation described. It is elementary that, as between two permissible constructions of statutes, the one should be adopted that will advance the legislative purpose. The object of the legislature is apparent. It did not intend to arbitrarily mark off a space or area and call it an intersection. Rather it sought to describe an area which was open to a particiular character of use by traffic. Obviously it intended to describe by definition the area that is open to the common use of traffic flowing from highways which join at an angle. It concluded that an extension of the boundary lines of the intersecting highways would embrace the whole of such a common area. With such an area in mind, and with the object of promoting safety, it sought to regulate and adjust the speed of a driver to his opportunities for uninterrupted observation. To assure such control as would permit almost instantaneous stops, it required a driver with an obstructed view to reduce his speed to fifteen miles per hour at a distance of fifty feet from the cross-traffic danger zone. With this background we turn to the physical situation. We cannot fail to see that by the addition of right-of-way the boundaries of these two highways were expanded through this area. This was pursuant to plans which evidently contemplated such an enlargement of the common area as would improve observation and permit some separation of traffic streams and thus reduce points of concentration. In anticipation of such engineering the legislature has provided that "when an intersection is so constructed and laid out that different and clearly defined courses of travel are provided for vehicles turning to the left or right, as the case may be, it shall be lawful for any driver in making any such turn to follow the course thereby indicated." SDC 44.0316. By such engineering there were created new points where opposing traffic streams will cross; lawful traffic turning to the left will meet straight through traffic at a point outside of the square formed by a prolongation

of the normal sixty-six foot boundaries of these highways. Further, the whole of the enlarged space provides ground where one proceeding lawfully may come upon cross traffic proceeding in violation of the law of the road. With these considerations held up to view, we are faced with a choice between extending the normal boundaries of these intersecting highways and thus marking off a more or less arbitrary space bearing little relation to the dominant legislative purpose, or extending the expanding curved boundaries by which the area is enlarged and thus embrace that which is in fact, as well as by definition, an intersectional unit. We are impelled to recognize the actual boundary lines and to follow or prolong such expanding boundary lines to their point of intersection and mark off an eastern and southern boundary of the intersection approximately one hundred twenty feet from the exact center of the area. It follows that the statutory regulation required plaintiff to reduce his speed to fifteen miles per hour at a distance of about one hundred seventy feet from the center of the intersectional space.

■ Analysis of the evidence as a whole reveals that plaintiff has utterly failed to prove any circumstances justifying his greater speed, and impels the inference that plaintiff could and would have avoided the collision had he been traveling at such a moderate speed when he actually discovered Gulbrandson. Hence we conclude as a matter of law that plaintiff was negligent in failing to observe the statutory standard of conduct, and further that such negligence, co-operating with the negligence of defendant, brought about the harm of which he complains. Campbell v. Jackson, 65 S. D. 154, 272 N. W. 293. It follows that the assignments we have described were well taken and are fatal to plaintiff's cause unless the contentions defendants advance in reference to the comparative negligence statute are inadmissible.

From the outset, defendants have advanced two contentions dealing with the issue of comparative negligence, viz., (1) the title of Ch. 160, Laws of 1941, is deceptive and

misleading and contravenes the provisions of Section 21 of Article III of the Constitution and (2) plaintiff was guilty of more than slight contributory negligence and therefore the doctrine of comparative negligence was not applicable.

■ If defendants' second position is well taken, we need not, and indeed we should not, deal with the constitutional question advanced. A court is not warranted in passing on the constitutionality of a statute unless such a determination is essential to the disposition of the cause under consideration. In re Forming and Organizing Common School District, 61 S. D. 79, 246 N. W. 245. We therefore turn to a consideration of defendants' second contention. ·

The statute, Ch. 160, Laws of 1941, reads: "Section 1. In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

■ This enactment having been patterned after a Nebraska statute (Cf. Sec. 20-1151. Comp. St. Neb. 1929), it is presumed that the intention of the legislature is reflected by its previous construction of the courts of that state. Melby v. Anderson, 64 S. D. 249, 266 N. W. 135. From a study of the Nebraska cases wherein this statute was applied and construed we are led to believe that the courts of that state look upon Morrison v. Scotts Bluff County, 1920, 104 Neb. 254, 177 N. W. 158, as the leading case on the subject. In that case it was said: "The true rule is that, if plaintiff is guilty of negligence directly contributing to the injury, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was

slight, and the negligence of defendant was gross in comparison therewith. If, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which under the circumstances amounts to slight negligence, or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, then the contributory negligence of plaintiff, however slight, will defeat a recovery."

From the wording of the statute, and the previous constructions by the Nebraska court, we conclude that the act is limited in its application to cases in which the evidence warrants the inference that plaintiff was guilty of no more than slight contributory negligence. Disher v. Chicago, R. I. & P. R. Co., 93 Neb. 224, 140 N. W. 135; Sodomka v. Cudahy Packing Co., 101 Neb. 446, 163 N. W. 809; Baker v. Omaha & C. B. St. R. Co., 110 Neb. 246, 193 N. W. 341; Traphagen v. Lincoln Traction Co., 110 Neb. 855, 195 N. W. 472; Allen v. Omaha & S. I. R. Co., 115 Neb. 221, 212 N. W. 428; Anderson v. Altschuler, 125 Neb. 853, 252 N. W. 310; Troup et al. v. Porter, 126 Neb. 93, 252 N. W. 611; McDonald v. Omaha & C. B. St. R. Co., 128 Neb. 17, 257 N. W. 489; Belville v. Bondesson, 130 Neb. 926, 266 N. W. 901; Vol. 17, No. 1, Nebraska Law Bulletin 68; 17 Cornell Law Quarterly 604 at 638.

Thus it is made to appear that this branch of the case requires a determination of whether the contributory negligence of plaintiff in driving into the described zone of danger at a speed of close to forty miles per hour was more than slight.

So far as we have been able to discover the only case in which the Nebraska court has dealt with the meaning of "slight negligence" is that of Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N. W. 623, 625. In that case it said: "Any one of common sense knows that slight negligence actually means small or little negligence, * * *." Because that state does not recognize degrees of negligence per se, Village of Culbertson v. Holliday, 50 Neb. 229, 69 N. W. 853, it has been suggested that the words have refer-

ence to "slight want of ordinary care", Vol. X, No. 2, South Dakota Bar Journal 146 at 148. This jurisdiction does not recognize degrees of negligence per se. Wittstruck v. Lee, 62 S. D. 290, 252 N. W. 874, 92 A. L. R. 1361. The statute imposes a standard of ordinary care. SDC 47.0304. Thus the concept of "slight negligence" frequently described or defined as want of extraordinary care (see 45 C. J. 666) is without place in our law of negligence. Hence we have concluded that the legislature made use of the words "slight negligence" to describe a quantum of want of such ordinary care as a reasonable man would exercise under the circumstances.

The uncertainty in this legislative concept is intrinsic. We question whether a definition can be devised which will sharpen the line which separates "slight negligence" from other shadings of want of ordinary care. It may well be that it can only be more definitely isolated through a process of exclusion and inclusion as particular cases receive consideration. In any event, a more precise understanding of its limits is not essential to a disposition of the case at bar.

In common usage the epithet "slight" means "small of its kind or in amount; scanty; meager." Webster's New International Dictionary. We can discern no reason for reading it in a different sense. The legislative purpose is clearly revealed. It has not sought to uproot the doctrine of contributory negligence as it exists in our law. It has sought to benefit only a particular class of plaintiffs in negligence cases, and that a very limited class. Speaking in broad terms, it may be said that the object of the legislature is to render the rule of contributory negligence inapplicable if the contributory negligence of plaintiff is small in quantum, in cases in which it also appears by a process of comparison that the disparity between the quantum of defendant's negligence and that exhibited by plaintiff is extreme. As we interpret the act, and as we understand it to have been interpreted by the Nebraska court, to bring a case within the rule of the statute, the contributory negligence

of plaintiff must be no more than slight, and in addition, the negligence of defendant must be no less than gross or great in comparison with the slight or small contributory negligence of plaintiff.

Alert to his situation, one about to violate the statute and drive into such a zone of danger at thirty to forty miles per hour with his view obstructed, would recognize that such conduct would be fraught with great likelihood of harm to himself and to others. The variance between such conduct and the ordinary care a reasonable man would exercise in the circumstances is, in our opinion, much more than slight. We hold that Ch. 160, Laws of 1941, is without application to the undisputed facts disclosed by the evidence.

It follows that we are of the opinion that the learned trial court erred in overruling the exceptions to and requests for instructions we have listed, and in failing to grant a new trial on those grounds, and on the further ground that the evidence is insufficient to support the verdict in the particulars specified by defendants. The foregoing views are determinative, and other contentions need not be considered. Because the particulars of plaintiff's negligence were not fully developed until presented in connection with the motion for new trial, and the Judges are not in agreement as to whether plaintiff was guilty of contributory negligence as a matter of law in the particulars specified in the defendants' motion for a directed verdict, we have elected to deal with the sufficiency of the evidence under the assignments we have described.

The judgment and order of the trial court are reversed.

All the Judges concur.