**AUDISS v. PETER KIEWIT SONS CO.**

No. 14,280.

United States Court of Appeals
Eighth Circuit

July 6, 1951.

G. F. Johnson, Gregory, S. D., for appellant.

C. F. Kelsch, Mandan, N. D. (W. J. Sullivan and A. R. Scanlon, Mandan, N. D., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

The appellant, who was the plaintiff in this action, is the administratrix of the estate of her deceased husband. She is a resident of South Dakota. Defendant is a corporation organized under the laws of the State of Nebraska. In her complaint plaintiff alleged that her husband died in an accident caused by the negligence of defendant's agents, and sought recovery of damages. Defendant denied any negligence on its part, and counterclaimed against the plaintiff for damages caused defendant's equipment in the same accident, alleging that the accident was caused by the negligence of plaintiff's decedent. At the conclusion of all the evidence, the trial court sustained the motion of defendant for a directed verdict in its favor as to plaintiff's action on the ground that the evidence was insufficient to permit plaintiff to recover. Thereupon defendant dismissed its counterclaim and judgment for defendant was entered pursuant to the directed verdict. The single question presented on this appeal is whether the trial court erred in so directing a verdict for the defendant. The appellant insists

here as she did on the trial that there was sufficient evidence to support a verdict in her favor.

Despite much conflict there was evidence from which it could fairly be inferred that:

The accident occurred between 6:30 and 7:00 P.M. in the evening of September 21, 1949. Plaintiff's decedent was driving a loaded cattle truck south on South Dakota Highway No. 73 in Perkins County, South Dakota. The decedent had entered Highway No. 73 at the point where that highway intersects U. S. Highway No. 12, some seven or eight miles north of the point of the accident. Highway No. 73 is a gravelled road with an oil surface, and at the point of the accident the oiled surface was 28 feet wide, with shoulders of three feet in width on each side. The highway at that point is approximately level, and the weather at the time of the accident was clear. It was after dusk when the accident happened, and all persons driving there at the time had their car lights on.

At the intersection of Highways 73 and U. S. 12, there were signs posted to the effect that Highway 73 was "Under Construction", and other signs setting the speed limit on 73 at 35 miles per hour. Highway No. 73, however, was heavily traveled, and for the seven or eight miles from the intersection to the point of the accident the road appeared to be completely repaired and there were no signs of construction work on it—that is, there was no road repair equipment either in use or parked along the highway, nor were there any flares or any other indications to show that the road repairs were not completed. Between the intersection and the point of the accident there were several signs posted setting the speed limit at 35 M.P.H.

The decedent's truck was the lead truck of a group of three cattle trucks proceeding south. The speed of all three trucks was between 30 and 35 miles per hour, and the drivers were maintaining a uniform distance between their trucks of 100 to 150 yards. The lights and brakes on the decedent's truck were in good operating condition, since the truck had been overhauled

shortly before the accident. The decedent himself was an experienced truck driver who had done a great deal of night driving.

As the decedent proceeded down the highway on his proper side, he collided with a road packer, or road roller, owned and operated by the defendant. His truck was overturned and burned and he died before he could be gotten out of the wreckage.

Defendant's road roller was being operated by the defendant's employees in rolling the final oil coat on the highway. The roller was of the type called a tandem-roller—that is, there were two large rolling surfaces, positioned like the front and rear wheels of a bicycle. These rolling surfaces were 54 inches wide, the overall height of the roller itself was 6½ feet, and it weighed about eight tons without ballast. The rolling surfaces were of steel, as was the roller itself. The roller had been in use for some time on the road and the rolling surfaces were a dull, neutral color. The roller was of a dull or dark green color.

The lighting equipment on the roller consisted of four lights on the south end and three lights on the north end. On the front, or south, end of the roller there were two white lights with clear lenses about five inches in diameter, and two red automobile tail lights. These lights were mounted in pairs, a red light and a white one being mounted on the same bracket. On the rear, or north end—that is, the end which the decedent approached—there were two white lights with the five inch clear lens and one red light. It was admitted the other red light on the rear had been missing for some time. The testimony of the witnesses was conflicting as to which of these lights were lit at the time of the accident. The testimony of witnesses called for plaintiff was to the effect that at the time of the accident only one "very dim light" on the roller was shining toward the north, and that that light was white. There were no reflectors or any similar devices at any place on the roller.

The roller was operating in about the middle of the west lane of the highway and was proceeding south. According to testimony for the plaintiff the roller was not moving at all at the time of the collision,

but according to the testimony of the man on it it was being operated toward the south at the rate of two miles per hour.

Just before the fatal accident another driver had been proceeding south on the same highway in a DeSoto car. This witness testified that he was going 35 miles per hour and that he came within 30 feet of the roller before he saw a white light shining north. This driver testified that he did not know which part of the roller he discerned first but that "it loomed up after I saw the light". He turned his car as sharply to the left as possible and barely avoided a collision. Other witnesses testified to the fact of the difficulty of seeing the roller. A driver going north had passed the roller just as the decedent was approaching going south. This driver and the decedent dimmed their lights for each other as they passed, as required by South Dakota law (S.D.C. 44.0356: "* * * Whenever a motor vehicle meets another vehicle on any highway it shall be mandatory to tilt the beams of the head lamps downward * * *").

There was evidence that the defendant had not fully complied with South Dakota statutes which called for reflectors on all commercial vehicles, and required all vehicles to have a red rear light visible for 500 feet to their rear. Further, the mere fact of having or operating such a cumbersome, comparatively immobile piece of heavy equipment on a well traveled highway after dark without taking any kind of special precautions to protect the traveling public against injury from it might well have been found to constitute negligence when considered in connection with all the other circumstances.

In passing upon the asserted error in directing the verdict for the defendant, the evidence must be viewed in the light most favorable to the party against whom the verdict was directed. Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Kuper v. Betzer, 8 Cir., 115 F. 2d 842; and also the holding of the trial court upon the status of the law of the state within which it acts must be accorded great weight by the appellate court and must not be overturned unless the appellate court is convinced that the view taken by the trial court was erroneous. Northern Liquid Gas Co. v. Hildreth, 8 Cir., 180 F. 2d 330; Mast v. Illinois Central R. Co., 8 Cir., 176 F.2d 157.

South Dakota has its Comparative Negligence Law, Chap. 160 of the South Dakota Session Laws of 1941, which is controlling in this case and which provides: "Section 1. In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

It apparently seemed to the trial court that notwithstanding the comparative negligence provision, the South Dakota law required the dismissal on account of the decedent's contributory negligence and such ruling was undoubtedly in accord with expressions found in earlier decisions of the South Dakota Supreme Court. Carlson v. Johnke, 57 S.D. 544, 234 N.W. 25, 72 A.L.R. 1352, following Ruth v. Vroom, 245 Mich. 88, 222 N.W. 155, 62 A.L.R. 1528. That court has experienced difficulty, as have others, in applying the comparative negligence statute in the cases of automotive vehicle collisions. But we think its later pronouncements clearly require that such a case as is here presented must go to the jury.

Such a statute as the one the State of South Dakota adopted does not abrogate entirely the old doctrine that contributory negligence on the part of a plaintiff will bar his recovery in an action for damages for another's negligence. As stated in Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438, 442: "From the wording of the statute [Chap. 160, 1941 Session Laws], and the previous constructions by the Nebraska court, we conclude that the act is

242

limited in its application to cases in which the evidence warrants the inference that plaintiff was guilty of no more than slight contributory negligence." The South Dakota courts have recognized that the South Dakota Comparative Negligence Law was adopted from an identical Nebraska statute, and that constructions placed on the law by the Nebraska Supreme Court are reflected in the intention of the South Dakota Legislature in adopting the law. Friese v. Gulbrandson, supra. The Nebraska court clearly limited the field of applicability of the statute in Morrison v. Scotts Bluff County, 104 Neb. 254, 177 N.W. 158, to cases in which the negligence of the plaintiff is slight and the negligence of the defendant is gross in comparison. In all other cases, the established law of contributory negligence is applicable.

There is difficulty in the comparing of negligence of the two parties because as stated in Friese v. Gulbrandson, supra: "The uncertainty in this legislative concept is intrinsic." In Roberts v. Brown, 72 S.D. 479, 36 N.W.2d 665, 667, in speaking of the same difficulty, the South Dakota court said: "Because of the uncertainty intrinsic in this statute it is apparent that each case must be determined upon the facts presented. There is no exact rule or standard that can be fixed for its application. We have read a number of cases from Nebraska, from whence our statute came, and are unable to determine any fixed rule or standard which accounts for the results reached in the several cases."

Thus the South Dakota court expressly disclaims imposing upon the trial court a rule or standard of law which it must follow in applying Chap. 160, Sessions Laws of 1941, in such cases as here presented, and this court cannot affirm the judgment on the ground that the trial court in the state has applied a permissible conclusion as to a doubtful local law. It is plain that under South Dakota law there was an issue for the jury if it could fairly and reasonably be inferred from the evidence that the negligence of plaintiff's decedent was slight and that of defendant was gross in comparison.

South Dakota does not recognize degrees of negligence. Will v. Marquette, 40 N.W.2d 396, 397. In that case in construing the South Dakota Comparative Negligence Law, it is stated: "It is settled that the words 'slight negligence' are employed in the foregoing act to describe a quantum of want of such ordinary care as a reasonable man would exercise in the particular circumstances." In the present case then, did plaintiff's decedent act with a "want of such ordinary care as a reasonable man would exercise in the particular circumstances"? We think it cannot be held as a matter of law that the decedent acted without ordinary care. It may be admitted that a driver should be able to stop his car within range of his vision. However, a driver is not held to the duty of seeing objects which are not discernible. No one would hold a driver to the duty of seeing an object that was perfectly camouflaged on the road within range of his vision, and, on the other hand, no court could excuse a driver for not seeing an object which was brilliantly lighted up and readily apparent in the road ahead of him. Between those two extremes there are many instances which fall squarely into one category or the other, but there are also many cases in which it is impossible to declare as a matter of law that the particular conduct does or does not constitute "slight negligence". In the latter instances it is a jury function to determine whether plaintiff acted with a want of ordinary care. It is our view that this is such a case and that the trial court erred in withdrawing it from the jury. As stated in the case of Monasmith v. Cosden Oil Co., 124 Neb. 327, 246 N.W. 623, 624, where the Nebraska court was considering a plaintiff's negligence in running into an unlighted parked automobile: "Where an object on a highway in front of one driving thereon at night is so nearly the color of the road that it may be difficult to distinguish it until quite close, it cannot be said, as a matter of law, that such person was guilty of more than slight negligence in his failure to see it in time to stop his car or to prevent running against it. Under

such circumstances, it presents a question of fact, to be determined by the jury." In this case we have a road roller, a piece of equipment not ordinarily encountered on a highway. It was unusual in appearance. Approached from the end, it would be difficult to discern at night. The roller rested on the road and was not elevated on wheels above it so as to leave the road beneath it showing as in the case of an ordinary automotive vehicle. The rolling surfaces were of a neutral color, practically that of the road surface itself. The roller was a dull, dark green. The over all appearance to one coming upon it in the dusk would be that of a shapeless mass, almost identical in color with the road it rested on. In the case of King v. Farmer's Educational & Cooperative Oil Co., 72 S.D. 280, 33 N.W.2d 333, 336, the court held a plaintiff guilty of such contributory negligence as to bar recovery where the plaintiff ran into the back of a truck equipped with reflectors, saying, " * * * there was nothing exceptional about the object with which the driver collided. It was discernible by the exercise of ordinary care in observing the way ahead." From this statement we think it a fair inference that the South Dakota court recognizes that there may be unusual objects not readily discernible on the road, and in such cases a plaintiff will not be held barred of recovery as a matter of law from the fact alone that he collides with such objects.

If it be established that plaintiff is guilty of no more than slight negligence, the defendant must still be found guilty of negligence which is gross in comparison with that of plaintiff under the comparative negligence statute. Will v. Marquette, supra; Roberts v. Brown, supra; Friese v. Gulbrandson, supra. It is our opinion that if the jury found the plaintiff's decedent guilty of no more than slight negligence, the evidence was sufficient to justify a finding that the defendant was guilty of negligence gross in comparison. To operate equipment, which in appearance blends in with the road, at the rate of two miles per hour, after dark, on a heavily traveled road, without taking special care to protect the driving public, might well be held to constitute gross negligence when compared with the negligence of plaintiff's decedent in failing to discover the object on the highway.

On consideration of the entire record, it is held that the trial court erred in granting defendant's motion for a directed verdict. The plaintiff was entitled to have the case submitted to the jury.

Reversed and remanded for new trial in accordance herewith.