**BRUNK et al. v. CHICAGO, B. & Q. R. CO.**

No. 14785.

United States Court of Appeals
Eighth Circuit.

Oct. 20, 1953.

Paul W. Steward, Des Moines, Iowa (A. B. Crouch and L. J. Holroyd, Jr., Des Moines, Iowa, on the brief), for appellants.

John Hale, Burlington, Iowa (J. C. Pryor, Burlington, Iowa, and Thomas J. Guthrie, Des Moines, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an action commenced September 20, 1951, by J. L. Brunk, a citizen of Iowa, against the Chicago, Burlington & Quincy Railroad Company, an Illinois corporation, to recover damages in the sum of $40,000 for personal injuries sustained by him in a collision between a tractor and trailer truck which he was driving and a train operated by defendant's employees at a crossing near the town of Alma, Nebraska. The action was commenced in the district court of Iowa and removed to the United States District Court for the Southern District of Iowa.

For his cause of action plaintiff alleged that on March 13, 1951, at about 8:12 p. m., he was driving a tractor and trailer into the town of Alma, Nebraska, on highways Nos. 183 and 383 when the truck was struck by defendant's train; that at the crossing where the accident occurred the defendant maintained four separate tracks; that the railroad as it approaches the highway from the east runs through a cut partially obstructing the vision of a motorist proceeding in a southerly direction on the highway; that his personal injuries and damages complained of were the proximate result of the negligence of defendant's employees in failing to ring the bell or blow the whistle as required by the statutes of Nebraska; failure to have the locomotive properly lighted; in permitting a box car to be parked in such a position as to obstruct the view of a motorist approaching the crossing; failure to install proper signals warning motorists of the crossing; and in failing to maintain a proper lookout.

On December 6, 1951, the defendant filed an answer denying the alleged negligence of its employees. On December 7, 1951, plaintiff filed a reply and demand for a jury.

On April 25, 1952, an order was entered by the court at the instance of the defendant that the Highway Transport Company, a co-partnership operating tractor-trailers over highways, be summoned as an involuntary plaintiff in the action; and on June 25, 1952, the defendant filed a complaint against Brunk and the Highway Transport Company alleging that the collision referred to in the complaint was the proximate result of the negligence of Brunk and demanding judgment against both Brunk and the Highway Transport Company for $3,065.51 damages to the train. It was charged that Brunk was negligent in operating the motor equipment at a high and dangerous rate of speed; in failing to keep the motor vehicle under control; in failing to keep a proper lookout for the approach of the train; in failing to listen to warning signals of bell and whistle of the train; in failing to keep a proper lookout for the headlight of the train; in failing to observe the approach of the train; in failing to stop after he saw or should have seen the approaching train; and

in failing to stop after he heard the bell and whistle signals.

Thereafter, on July 8, 1952, the Highway Transport Company filed an answer and cross complaint against the railroad company admitting that the collision occurred about 8:30 p. m. on March 13, 1951, as alleged by the defendant, denying the charge of negligence of its employee Brunk and alleging that the collision was the result of the negligence of the employees of the defendant; and demanding judgment for resulting damages to the tractor, trailer and cargo in the amount of $7,415.46.

Defendant answered denying the charge of negligence in the cross-complaint.

The case was tried before a jury. At the conclusion of the testimony the court sustained a motion of the defendant to dismiss the complaint of Brunk and also of the Highway Transport Company and to direct a verdict for the defendant on both the complaint and the cross-complaint. Accordingly judgment was entered against Brunk for costs and against the Highway Transport Company for $3,065.51 and costs, from which judgments both Brunk and the Highway Transport Company have appealed.

Appellants contend that the court erred: 1. In directing a verdict against the plaintiff Brunk; 2. In directing a verdict against the Highway Transport Company on its complaint against the defendant; and 3. In directing a verdict against the Highway Transport Company on the defendant's cross-complaint.

The applicable substantive law is concededly that of Nebraska where the accident occurred. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Roth v. Swanson, 8 Cir., 145 F.2d 262, 265; Flagg v. Chicago Great Western Ry. Co., 8 Cir., 143 F.2d 90, 92. If, under the law of Nebraska, there was evidence which would justify a recovery by either of the plaintiffs the trial court erred in directing a verdict against that party. Thomson v. Stevens, 8 Cir., 106 F.2d 739, 740.

The Revised Statutes of Nebraska, 1943, reissue of 1948, applicable to this case are the comparative negligence statute, section 25–1151 [1]; the statute requiring specific signals to be given by locomotives as they approach highway or street crossings, section 74–573, reissue of 1950 [2]; and the statute specifying the proper headlights for locomotives, section 74–583. [3]

In the case of Campbell v. Union Pacific R. Co., 100 Neb. 375, 160 N.W. 101, 102, in an action to recover damages for injuries sustained by plaintiff in a col-

---

1. Section 25–1151. "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

2. Section 74–573. "A bell of at least thirty pounds weight, or a whistle, shall be placed on each locomotive engine, and shall be rung or whistled at the distance of at least eighty rods from the place where the railroad shall cross any road or street, and be kept ringing or whistling until it shall have crossed such road or street, under a penalty of fifty dollars for each failure to comply with this section, which shall be paid by the corporation owning or operating the railroad. Such corporation shall also be liable for all damages which shall be sustained by any person by reason of such neglect."

3. Section 74–583. "Every person, company and corporation or the receiver, lessee, manager or superintendent thereof, owning or operating lines of railway in the state of Nebraska, shall equip, maintain and use upon each and every locomotive engine operated in road service within the state of Nebraska, a headlight of a power that will plainly outline the figure of a man on or adjacent to the track at a distance of six hundred feet in front of the locomotive."

lision with a freight train at a public crossing the Supreme Court of Nebraska said: "The law applicable to the evidence may be stated as follows: Whether enginemen rung the bell or blew the whistle of a locomotive continuously for 80 rods before crossing a public highway as required by statute is a question for the jury, where witnesses who were in such position and condition that they would probably have heard the signals, if given, testified that they did not hear the whistle or the bell, and other witnesses testified that the whistle was blown and the bell rung."

In other words, in considering a motion for a directed verdict made by a defendant, the court must consider the evidence only most favorable to the plaintiff, and give to him the benefit of all inferences which reasonably may be drawn from the evidence. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Roth v. Swanson, 8 Cir., 145 F.2d 262, 265; Loudy v. Union Pac. R. Co., 146 Neb. 676, 21 N.W.2d 431; Anthony v. City of Lincoln, 152 Neb. 320, 41 N.W.2d 147. We are not concerned with the weight or the "overwhelming mass" of the evidence. We examine it only for the purpose of determining whether there was substantial evidence to support a verdict for the plaintiffs had the case been submitted to the jury and a verdict returned for them. Schwarz v. Fast, 8 Cir., 103 F.2d 865, 867.

There is no dispute as to where the accident involved herein occurred. Highways Nos. 183 and 383 run in a north-south direction and the railroad in an east-west direction. The crossing is but a short distance east of the railroad station at Alma, Nebraska. Here four tracks cross the highway. The defendant's main line is the third track from the north. Defendant's stock yards are located about 150 feet east of the center of the crossing on the north side of the railroad right of way, and they extend 233 feet along the right of way. At the time of the accident a stock car was standing on a track on the north side of the main track about six or eight feet east of the highway.

About a quarter of a mile east of the crossing the railroad passes through a cut and between this cut and the highway crossing are two other crossings.

The plaintiff J. L. Brunk, a resident of Iowa, was an employee of the Highway Transport Company, the involuntary plaintiff herein. This company, an Iowa partnership, is engaged in operating tractor-trailers over highways. Plaintiff Brunk had been engaged in driving semi-trailers for 15 or 16 years and was working for the Highway Transport Company in March, 1951. He started on a trip from Des Moines, Iowa, on March 12, 1951, with a load of automobiles consigned to Pueblo, Colorado. He stayed overnight in Creston, Iowa, and leaving there at 10 or 11 o'clock on the morning of March 13th he entered highways 183 and 383 at Holdredge, Nebraska, about 20 miles north of Alma. From there the road runs south past Alma. The roadway is 24-foot black top. He had never traveled this road before, and it was dark before he reached the vicinity of Alma. As he approached Alma he had been driving with his lights on for some time. There were two head lights, three lights on the cab, and one on each corner of the front of the trailer. He had not arrived at the lights of the town when he came to the railroad crossing. He did not see the disk sign 532 feet north of the crossing. He did see the sign nearer the crossing when he was about 100 feet north thereof. He slowed down to about 25 miles per hour and could then have stopped within 50 to 60 feet at the most. The windows in the cab were partly open. He listened for the sound of a whistle or a bell and heard none. He looked both ways. He could see the box car on the east side of the crossing, but he neither saw nor heard the train. He saw no lights in either direction. It was all darkness to the east. He did not see the beam of any lights to the east across the tracks ahead of him. As he passed by the box car he looked up and saw the engine

about 15 or 20 feet away from him. He was then going about 20 miles an hour. He put on the brakes and locked the wheels. But the front end of the tractor was then on the same track as the train. The light on the front of the locomotive was "big, dim, kind of reddish." The collision occurred immediately, resulting in the damages complained of in this proceeding. The train traveling from east to west consisted of a diesel electric engine and one coach. At the time of the collision it was slowing down to stop at the station situated on the south side of the tracks a short distance west of the crossing.

We are not particularly concerned with the testimony introduced by the defendant; but we shall note the pertinent evidence relating to the operation of the train and the alleged compliance of the engineer with the Nebraska statute.

Marion R. Tinsley, an employee of the defendant, was a passenger on the train. He was in the smoking compartment in the front end of the coach. He heard one whistle as the train approached the station, but he did not recall hearing the bell at any time. The engineer testified that he sounded the whistle and rang the bell in strict compliance with the requirements of the Nebraska law, and he did not believe that the lights dimmed as he approached the crossing. Ida Moxham, the only passenger in the coach, heard the whistle just once, but she did not know where the train was at the time. She did not testify as to whether or not she heard the bell. J. A. Hogeland was at the station at the time the train came from the east. He heard the bell on the locomotive but did not hear the whistle. George E. Shaw, brakeman on the train at the time, heard a whistle sounded while approaching Alma, but he did not hear the bell. Arlie G. Madison, a drayman and farmer, was at the station that night and he saw the train coming when it was at the cut east of town and observed that the headlight was bright; but he did not watch it further. He heard the whistle at that time, also, but gave it no further attention. Shuford C. Camby, a truck driver, was at the station. He saw the train as it came through the cut and the headlight was bright at that time. He also heard the whistle but did not hear the bell.

One of defendant's contentions urged with emphasis is that the plaintiff Brunk was guilty of negligence in failing to see the disk sign placed by the Highway Commission of Nebraska on the west side of the highway 532 feet north of the crossing to warn travelers on the highway of the presence of the railroad crossing. This contention is of no significance in considering a motion for a directed verdict. If the jury should believe the testimony of Brunk he saw the larger cross buck sign north of the crossing and on the west side of the highway when he was 100 to 150 feet north of the crossing. He had then slowed down to 25 miles an hour. He continued to slow down to about 20 miles an hour, and he testified that he could have stopped within 50 or 60 feet. His negligence or want of negligence as well as the alleged negligence of the engineer were matters for the consideration of the jury. If both were negligent then the comparative negligence of the parties was a matter for the jury to determine.

Reversed and remanded with directions to grant a new trial.