CHICAGO AND NORTH WESTERN RAILWAY COMPANY, a Corporation, Appellant,

v.

Elmer BORK, as Administrator of the Estate of Otto Bork, Deceased, Appellee.

No. 15248.

United States Court of Appeals Eighth Circuit.

June 24, 1955.

Rehearing Denied July 22, 1955.

William S. Churchill, Huron, S. D. (Irwin A. Churchill, Huron, S. D., was with him on the brief), for appellant.

H. F. Fellows, Rapid City, S. D. (John E. Goodrich, Rapid City, S. D., was with him on the brief), for appellee.

Before SANBORN, JOHNSEN, and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal from judgment for plaintiff, Elmer Bork, as Administrator of the Estate of Otto Bork, deceased (appellee), upon a jury verdict on claim for the wrongful death of Otto Bork resulting from a collision between a truck owned and operated by Otto Bork and defendant's (appellant's) switch train. Jurisdiction is based on diversity of citizenship. Defendant at the close of the evidence moved for a directed verdict, and after verdict moved for judgment notwithstanding the verdict, both of which motions were overruled. Defendant in its reply brief states:

"In considering a motion for directed verdict or for judgment notwithstanding the verdict, and on appeal from the denial of such motions, it is usually assumed that there is evidence from which a jury could find that the defendant was negligent. The real point at issue is the question of the contributory negligence of plaintiff's decedent and whether that was sufficient to bar recovery by the plaintiff."

There was sufficient evidence to present a jury question on the issue of defendant's negligence, and because of defendant's concession the only issue for our consideration is whether Otto Bork was guilty of such contributory negligence as would entitle defendant to a directed verdict as a matter of law. Since the accident occurred in South Dakota the law of that State governs. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

The record discloses that on December 19, 1952, Otto Bork, a farmer, driving his truck, and his neighbor, Klima, driving his truck, traveled from their homes near Belvidere, South Dakota, to Rapid City, South Dakota, about 125 miles distant. There each obtained a load of cement blocks. The two trucks left Rapid City for Belvidere together that evening, the Bork truck following the Klima truck. They proceeded east on Highway 14–16, a four-lane divided highway with two lanes available for eastbound travel. At and near the point of collision, about nine miles east of Rapid City, defendant's main track runs east and west, parallel and adjacent to and south of the highway. A spur track curves off the main line to the northwest and north to serve the Air Base, and runs approximately north and south across the highway. The engine with which the decedent collided was proceeding northward on this spur track, pulling some cars to the Air Base. Klima and the occupants of his car testified that the only evidence of the crossing or train they detected was the glare of the engine's bright headlight. They heard no bell or whistle, although they were in a position to hear such signals if given, and did not see the flare put out at the crossing until after they stopped about 15 feet short of the crossing. They testified that the flare was very dim and could not be observed from a moving vehicle. Klima's truck was equipped with a stop light which flashed on when he applied his brakes to stop for the crossing. As Otto Bork approached the crossing about 10 P.M., he turned to the left to pass the Klima truck. He was then traveling about 25 miles per hour, and his speed remained constant to the point of collision. By the time the Bork truck approached the crossing the engine had passed the curve on the spur track, and the glare of the engine's headlight was no longer discernible from the highway. Bork's truck collided with the train engine, causing the injuries which were responsible for his death.

The night was dark and clear. The road was dry, level, and smooth, and was surfaced with blacktop. The track cross-

ed the road at the road grade level. There were no obstructions impairing visibility. While the involved highway is a very busy one, at the time of the collision the only vehicles in the vicinity of the accident were the Klima and Bork trucks and the defendant's train. Mr. Bork traveled over this highway once or twice a year, and had passed over the accident crossing on his way to Rapid City on the morning of the accident. On the right-hand side of the highway was the usual disk advance warning sign, and there was a nine and one-half foot high cross-buck sign at the right side of the highway at the crossing. The signs were not luminous and there were no gates or flashing lights at the crossing. The conductor had preceded the switch train to the crossing and had set the flare. The jury could have found from the evidence that the flare did not serve its intended purpose because it cast only a very dim light. There is a conflict in the evidence as to whether the bell and whistle signals required by statute were given.

■■ Under the law of South Dakota, it is the duty of an automobile driver approaching a railroad crossing to look and listen, when looking and listening will be effective, and his failure to do so without reasonable excuse therefor is contributory negligence as a matter of law. Buboltz v. Chicago, M. & St. P. Ry. Co., 47 S.D. 512, 199 N.W. 782; Wooley v. Chicago & N.W. Ry. Co., 74 S.D. 203, 50 N.W.2d 644; Schuknecht v. Chicago, M., St. P. & P. R. Co., 74 S.D. 61, 48 N.W.2d 917. It is further held in the Schuknecht case that the failure of the railroad employees to give the statutory signals does not relieve the motorist of his duty to look and listen.

■ Under the South Dakota cases above cited, if Otto Bork knew of the railroad crossing, or in the exercise of ordinary care should have known of its presence, his failure to look and listen would constitute contributory negligence as a matter of law such as to bar any recovery. The crucial question in this case, therefore, is whether Otto Bork

knew or is chargeable with knowledge of the existence of the railroad crossing. In Johnson v. Chicago & Northwestern Ry. Co., 71 S.D. 132, 22 N.W.2d 725, the court, in reversing a directed verdict for the railroad, applies and quotes with approval the following excerpt from Stephenson v. Grand Trunk Western R. Co., 7 Cir., 110 F.2d 401, 409, 132 A.L.R. 455:

"* * * Without minimizing what often has been said regarding the duty of a person approaching a railroad crossing, to employ all of his senses for the purpose of ascertaining whether or not it is safe to cross, we do not believe such duty exists until he has knowledge, or by the exercise of reasonable care, should have had knowledge that there is, in fact, a crossing. Otherwise, a person traveling upon a highway would be under a continuous duty to look and listen for [trains] regardless of where he was with reference to a railroad crossing."

Upon appeal, after retrial of the Johnson case, 72 S.D. 580, 38 N.W.2d 348, at page 351, the court states:

"* * * There the court specifically stated that the requirement of the statute was satisfied by one sign, but did not instruct the jury that compliance with the statutory requirement of one sign was sufficient to give notice of the proximity of the railway and to warn decedent of the necessity of looking out for the train under the circumstances of this case. The court specifically instructed the jury that: '* * * if deceased did not see the crossing or crossing signs, or in the exercise of ordinary care could not have seen the crossing or crossing sign, or that there was a railroad track there, and did not see the oncoming train and was not aware of the presence of either, and in the exercise of ordinary care and prudence could not have discovered the proximity of such objects in time to avert the accident, then he was not guilty of contributory negli-

gence.' This instruction submitted to the jury the question of whether or not the kind of sign erected by the respondents, located on the south side of the road, was under all the surrounding circumstances sufficient to give decedent notice of the proximity of the railway and to warn him of the necessity of looking out for the train. * * * "

 Upon the defendant's motion here for a directed verdict, the evidence must be considered in the light most favorable to the plaintiff. There is room for a difference of opinion as to whether the decedent had traveled this highway enough to be familiar with the location of the spur crossing in the nighttime. The railroad had apparently complied with the minimum statutory requirements as to signs. There are, however, circumstances where ordinary care might require the railroad to do more than carry out the minimum statutory requirements. Here, we have two lanes for eastbound travel. The statutory signs were placed on the right-hand side of the right lane. Whether Bork in the exercise of due care could or should have seen the signs to the right of the highway when passing the Klima truck and traveling in the left lane appears to be debatable, particularly in the light of the evidence that the three occupants of the Klima truck traveling in the right lane did not observe such signs. The problem here is quite similar to that involved in the two Johnson cases, hereinabove cited, where the signs were to the left of the highway rather than to the right. Under the record in this case the jury could have found that Bork was given no notice of the approach of the train by any bell or whistle signal and that the flare warning was ineffectual. The main line of the railroad, as shown by the photograph exhibits, continues to parallel the highway beyond the point of collision. The telegraph poles follow the main track, and adjacent to the main track, beyond the point of collision, there are substantial buildings, such as elevators. There was nothing about the operation by Bork of his truck to indicate that he was aware of the presence of the crossing or the train as his speed remained constant to the point of collision. We do not believe that under this record it can be said as a matter of law that Bork knew or in the exercise of ordinary care should have known of the presence of the crossing.

South Dakota has a comparative negligence statute. Supp. to South Dakota Code of 1939, Section 47.0304–1.[1] In Friese v. Gulbrandson, 69 S.D. 179, 8 N.W.2d 438, at pages 442–443 the court, after pointing out that the foregoing statute is patterned after the Nebraska statute and after discussing the Nebraska interpretation of its statute, states:

" * * * The legislative purpose is clearly revealed. It has not sought to uproot the doctrine of contributory negligence as it exists in our law. It has sought to benefit only a particular class of plaintiffs in negligence cases, and that a very limited class. Speaking in broad terms, it may be said that the object of the legislature is to render the rule of contributory negligence inapplicable if the contributory negligence of plaintiff is small in quantum, in cases in which it also appears by a process of comparison that the disparity between the quantum of defendant's negligence and that exhibited by plaintiff is extreme. As

---

1. "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

we interpret the act, and as we understand it to have been interpreted by the Nebraska court, to bring a case within the rule of the statute, the contributory negligence of plaintiff must be no more than slight, and in addition, the negligence of defendant must be no less than gross or great in comparison with the slight or small contributory negligence of plaintiff."

In a number of instances the South Dakota court has found the negligence of the plaintiff was more than slight and that a directed verdict for the defendant was justified. Schuknecht v. Chicago, M., St. P. & P. R. Co., supra; Wooley v. Chicago & N. W. Ry. Co., supra; Creager v. Al's Construction Co., S.D., 68 N.W. 2d 484; Pleinis v. Wilson Storage and Transfer Co., S.D., 66 N.W.2d 68. In other cases the South Dakota court has held that under the record made the negligence of the plaintiff could be found to be slight and that of the defendant gross in comparison; and permitted a recovery under the comparative negligence statute. Winburn v. Vander Vorst, 74 S.D. 531, 55 N.W.2d 609; Id., S.D., 59 N.W.2d 819; Roberts v. Brown, 72 S.D. 479, 36 N.W.2d 665; Johnson v. Chicago & Northwestern Ry. Co., supra; Stone v. Hinsvark, 74 S.D. 625, 57 N.W. 2d 669; Will v. Marquette, 73 S.D. 192, 40 N.W.2d 396. The South Dakota cases hereinabove cited concede that the comparative negligence rule is a difficult one to apply. In the Pleinis case, supra, the court says, 66 N.W.2d at page 71:

" * * * However, in the application of this statute it must always be remembered that due to legislative injunction we are dealing with a degree of negligence which submits to no definite rule. Throughout the years neither man, court nor legislature has been able to furnish any yardstick or rule whereby negligence can be measured or degree determined. The result must always depend upon the circumstances of the particular case and nothing else."

In Roberts v. Brown the court states, 36 N.W.2d at page 667:

" * * * Because of the uncertainty intrinsic in this statute it is apparent that each case must be determined upon the facts presented. There is no exact rule or standard that can be fixed for its application. We have read a number of cases from Nebraska, from whence our statute came, and are unable to determine any fixed rule or standard which accounts for the results reached in the several cases. * * * The result seems to depend upon the composite judgment of the members of the court as to whether reasonable men might differ upon the question of whether plaintiff's acts constitute negligence more than slight."

This court has had occasion to consider the South Dakota comparative negligence statute in Audiss v. Peter Kiewit Sons Co., 8 Cir., 190 F.2d 238, which was an action for wrongful death growing out of a collision between a truck and a road roller. This court reversed a directed verdict judgment for the defendant after reviewing the South Dakota cases, saying (at page 242):

" * * * Thus the South Dakota court expressly disclaims imposing upon the trial court a rule or standard of law which it must follow in applying Chap. 160, Sessions Laws of 1941, in such cases as here presented * * *."

In Brunk v. Chicago, B. & Q. R. Co., 8 Cir., 207 F.2d 354, 358, the Nebraska comparative negligence statute was considered. That case involved a collision between a truck and a train. The truck driver was not familiar with the crossing. One of the defendant's contentions was that the truck driver was negligent in not seeing the warning sign. We held that this contention was of no significance in considering a motion for a directed verdict, saying, "If both were negligent then the comparative negligence of the parties was a matter for the jury to determine." We also held in Union Pac. R. Co. v.

Denver-Chicago Trucking Co., 8 Cir., 202 F.2d 31, which involved Nebraska law, that the comparative negligence issue was for the jury. There, the driver was aware of the existence of the spur track and was unable to stop after seeing the train. A flag man stationed at the crossing observed plaintiff and signalled him with a lantern to stop. The plaintiff did not identify the lantern signal. The court held that the jury was justified in finding that the plaintiff was not negligent in not recognizing the lantern signal. The lantern situation is similar to the flare signal in the case we are now considering. In the Union Pac. case the court states, at page 35:

" * * * But the plaintiff's negligence is not to be evaluated as slight, or otherwise, standing alone. The criterion by which the degree of negligence is to be measured is the extent thereof by comparison with defendant's negligence. * * *"

We have frequently said that upon doubtful questions of local law we will not adopt a view contrary to that of the trial judge unless we are convinced of error. Buder v. Becker, 8 Cir., 185 F.2d 311, 315; Russell v. Turner, 8 Cir., 148 F.2d 562, 564; Bryant v. Chicago Mill & Lumber Co., 8 Cir., 216 F.2d 727, 734. The question of defendant's right to a directed verdict under this record is a close one. We have carefully considered the South Dakota cases interpreting its comparative negligence law. We find nothing in such cases which clearly demonstrates that the trial court misconstrued or misapplied the South Dakota law. We believe that under this record it is possible for reasonable minds to differ on the issue of whether Bork knew or in the exercise of reasonable care should have known he was approaching a railroad crossing; and further, in the event Bork was negligent in failing to observe the crossing signs, a jury issue was present whether such negligence, if any, was slight in comparison with the negligence of the defendant.

The judgment is affirmed.