NOE, Respondent, v. HEADLEY et al., Appellants.

**St. Louis Court of Appeals, May 22, 1906**

TRUSTS AND TRUSTEES: Liability of Trustee for Profits in Trust Property. Where the directors of a corporation, which had expired by limitation, sold to one of their number a tract of land belonging to the corporation without the consent of one of the shareholders, the purchaser was liable to such shareholder for the latter's *pro rata* share of the profits made by the purchaser on a resale of the property.

Appeal from Greene Circuit Court.—*Hon. J. E. Mellette,* Special Judge.

REVERSED.

*Benj. U. Massey* for appellants.

*C. B. McAfee,* pro se.

(1) The directors of a living and going corporation are trustees of the shareholders. Section 4009, Thompson on Corporations; and incidentally and indirectly of the creditors of such corporation. Section 4021, Thompson on Corporations. Such directors can convey the property of the corporation, directly, to any associate director if such conveyance is made for a proper consideration, and in furtherance of the business purposes of said corporation. Thompson on Corporations, sec. 4059, 4064 and 4070; Butler v. Land & Mining Co., 139 Mo. 476, 41 S. W. 234; State ex rel. v. Rubber Mfg. Co., 149 Mo. 205, 50 S. W. 321; Bent v. Pratt, 86 Mo. 475. (2) Such directors, upon the dissolution of the corporation, continue and remain, as before, trustees of the shareholders and now directly of the creditors as well. R. S. 1899, sec. 976. And can likewise in same

manner, validly and legally, convey the property belonging to the corporation at its dissolution, directly to a shareholder or to an associate director or trustee, if only said conveyance is made in furtherance of, and in pursuance to, the purposes of their trust. R. S. 1899, sec. 976; Hotel Co. v. Sauer, 65 Mo. 279-87; Landis v. Sexton, 105 Mo. 486-89, 16 S. W. 912; Land Co. v. R. R., 161 Mo. 603, 61 S. W. 847.

*Tatlow & Mitchell* for respondent.

(1) The statute declares that upon the dissolution of any corporation the president and directors or managers of the affairs of the corporation at the time of the dissolution shall be trustees of the corporation with full powers to settle the affairs, collect the outstanding debts, due and owing by the corporation as far as the money and property will enable them to do so; also to sue and recover such debts and property by the name of the trustee of such corporation and that such trustees shall be jointly and severally responsible to creditors and stockholders to the extent of its property and effects. (2) It is claimed that under this statute the only action that will lie is one at law. No authorities, however, are cited to sustain this contention. All law books agree, however, that quite the reverse is true. 2 Cook on Corporations, sec. 641, 662; Mining Co., v. Mining Co., 133 U. S. 50. (3) In accordance with that fixed rule of equity, that a trustee shall not be allowed to profit by the administration of his duties as trustee as well as that other equally well-settled principle that a trustee cannot occupy the dual position of buyer and seller which incapacitates him from discharging his duty of of gaining the most advantageous bargain possible for the *cestui que trust* the purchase by a trustee of trust property is not generally allowed to stand and the title secured thereby to the trustee is voidable. 28 Am. and Eng. Ency. of Law (2 Ed.), 1016; Darling v. Potts, 118

Mo. 506, 24 S. W. 461. (4) The fact that these trustees owned an interest and were therefore co-beneficiaries, does not change the rule. 28 Am. Eng. of Ency. Law (2 Ed.), 1028. (5) The rule is certainly well settled that the *cestui que trust* has the right to elect as to whether he will follow the trust property or proceed against the trustee personally for damages for violation of the trust. 28 Am. and Eng. Ency. of Law (2 Ed.), 1120; Barr v. Cubbage, 52 Mo. 404.

BLAND, P. J.—In November, 1881, plaintiff and others associated themselves and incorporated under the laws of this State, under the name of the Springfield Driving Park and Fair Association, with a capital stock of four thousand dollars, divided into forty shares of one hundred dollars each, paid up. Plaintiff took one share of stock, which he still holds. With the four thousand dollars subscribed and paid in, the corporation acquired about seventy-six acres of land in or near the city of Springfield. Afterwards the capital stock of the corporation was increased to ten thousand dollars, and sixteen additional shares of stock were sold for sixteen hundred dollars. With this ·money and six or seven hundred dollars additional, borrowed by the corporation, it constructed a race track and made other improvements on the land. At a still later date the tract of land was leased to the Springfield District Fair Association (another corporation) for a rental of one hundred dollars per annum. The rent money was expended in the payment of taxes and the six or seven hundred dollars of borrowed money. About 1886 O. M. Headley, C. B. McAfee and H. F. Denton were chosen as directors of the corporation and continued to act as such until the life of the corporation expired by limitation (November, 1901), In August, 1903, Headley, McAfee and Denton, having first obtained the consent of all the stockholders in the corporation, except plaintiff,

sold forty-six and seventy-six hundredths acres of the
seventy-six-acre tract to the Springfield District Fair
Association for twelve thousand five hundred and
twenty-five dollars, and two days thereafter McAfee and
Denton sold the remainder of the seventy-six-acre tract to
O. M. Headley for ten thousand dollars. Deeds purport-
ing to be made by the Springfield Driving Park and
Fair Association were executed and delivered to each
of the purchasers. Afterwards a deed was executed
to the Springfield District Fair Association by Head-
ley, McAfee and Denton, as trustees of the defendant
corporation, and a deed to Headley was made by McAfee
and Denton, as trustees.

The case was tried to Hon. J. E. Mellette, as special
judge, who found, and there is evidence to support the
finding, that Headley by the re-sale of the land he ac-
quired realized seventeen thousand two hundred and
ninety-six dollars, or a profit of seven thousand two
hundred and ninety-six dollars. The court found that
the deed from McAfee and Denton, as trustees, to Head-
ley, was void. But for the reason the land had passed
to innocent purchasers for valuable considerations, the
plaintiff was not in a position to disturb their title.
It also found that plaintiff, as a stockholder in the
defunct corporation, was entitled to participate in the
profits made by Headley, and found his share of such
profits to be one hundred and thirty-four dollars, and
rendered judgment in his favor against McAfee and
Headley for four hundred dollars, the amount conceded
to be his distributive share from the proceeds of the
sales of the seventy-six acres of land, plus the one hun-
dred and thirty-four dollars found to be his share of
the profits made by Headley.

The suit was in equity, brought against Headley,
McAfee and Denton, and all other parties who claimed
any interest in or title to any of the land and whose
title was derived through the deed made by Headley,

McAfee and Denton, and the one made by McAfee and Denton. The petition alleged the lands were sold at much less than their actual value, and prayed for an accounting. Denton died pending the suit. It was dismissed as to him, and the court found that plaintiff had no cause of action against any of the defendants, except McAfee and Headley. They alone appeal.

There is not a syllable of evidence showing or tending to show any actual fraud in the sale to Headley, or that the sale to him and the one to the Springfield District Fair Association was for less than the market value of the land at the time the several sales were made; to the contrary, the evidence shows that the land had been on the market for over a year and but for the fact that the Springfield District Fair Association wanted the land it purchased for fair purposes, it could not have been sold for the price obtained; and that Headley was enabled to make a profit on the portion of the land he purchased for the reason it was subsequently selected to make up the site of the Southwest or Springfield Normal School, established by the State. The evidence shows that plaintiff never took any interest in the affairs of the Springfield Driving Park and Fair Association during the life of said Association, and made no effort to close up its affairs after it expired by limitation. There is no evidence in the record to show that plaintiff assented to the sale to Headley, hence under the well settled rule, that a trustee must account to his *cestui que trust* for profits made out of the trust property, Headley, the trustee, who made the profit, is liable to plaintiff for his share of such profits, found by the court to be one hundred and thirty-four dollars. McAfee, though a co-trustee, was not a co-owner in the tract of land out of which Headley made the profit, received none of said profits, is not entitled to any of them, and there is no principle of law or equity by which he should be held liable

in this suit, Headley being entirely solvent. There was no occasion to sue for the four hundred dollars, plaintiff's pro rata share of the assets of the corporation. For, according to the evidence this sum, ever since the sales of the land were made, has been held for him, and the only reason he has not received it, is because he has refused to call for it. According to the facts found by the learned trial judge, and we think they were correctly found, the judgment should have been against Headley alone and only for one hundred and thirty-four dollars. If the four hundred dollars is not paid on demand, then suit against McAfee and Headley to recover it will be in order. But a suit to recover the four hundred dollars and the profits made by Headley cannot be joined, for the reason McAfee is not liable for the profits.

The judgment is reversed, and judgment will be entered here against Headley alone for one hundred and thirty-four dollars, with interest thereon at the rate of six per cent per annum from July 6, 1905, the date the suit was commenced. *Nortoni, J.,* concurs. *Goode, J.,* not sitting.