LIZZIE H. HALL et al. v. M. J. LAVAT, Appellant.

Division One, December 31, 1923.

1. **TITLE TO LAND**: Adverse Possession: Defunct, Corporation: Abandonment: Lease. The plaintiffs had the record legal title of the land in this action at law to quiet title. In October, 1907,

a corporation, by quit-claim deed from a stranger to the chain of record title who was not in possession, acquired color of title, and in 1909 executed a deed of trust thereon, which was foreclosed in 1919 and defendant became the purchaser and received a trustee's deed. In 1913 the charter of the corporation was forfeited by the State, and there is evidence that after the company ceased to exist its president remained in possession until 1918, but in September, 1917, he, as lessee, and the plaintiffs, as lessors, executed a written lease of the premises for the years 1918 and 1919. *Held*, that it is not the law that, after said corporation had ceased to exist and its charter had been forfeited, its president could not, because he was trustee for such corporation, give up or abandon the possession to plaintiffs, the true owners, at a time when the title had not, by adverse possession, vested in said company or its trustees. There had not been ten-years' adverse possession when the lease was executed, and consequently the title had not vested in said corporation or its trustees, and neither it, nor its trustees, nor its president as its *alter ego*, had any right under the statute (Sec. 9755, R. S. 1919) to retain possession without rendering themselves liable to plaintiffs for damages and his acceptance of the lease as lessee, in his individual name, and his acknowledgment thereby that plaintiffs, the lessors, were the owners, was a disclaimer of adverse possession and an abandonment, and in consequence defendant does not have title by.adverse possession under color of title. But if there had been adverse possession by the corporation or its trustee for ten full years, the title would have become vested in it, or in its trustees for the use of its creditors, and could not have been divested by the acceptance of a lease, but only by a conveyance for a valuable consideration.

2. ———: ———: ———: ———: **Right of Trustees.** After the dissolution of a corporation its trustees (who under the statute are its officers and directors) have full authority to settle its affairs and dispose of its property, and they have a right to surrender, or disclaim an adverse holding of, lands not owned by it but previously held adversely, unless the adverse holding has been for the period prescribed by the Statute of Limitations. If the adverse holding has ripened into title in them, they hold it as a trust fund for its creditors and stockholders, and can dispose of it only by a conveyance for a valuable consideration; if the adverse holding has not ripened into title and they do not own it, they can surrender possession and disclaim any interest in it, and are liable for damages to the true owner if they do not; and where the president is the *alter ego* of the corporation, and the only trustee in possession, he alone can disclaim holding adversely and surrender possession without the joinder of the other trustees,

especially where the evidence fails to show any objection on their part.

3. ——: ——: **Must be Hostile and Continuous: Lease.** Possession, in order to ripen into title, must be adverse and hostile to the true owner continuously and uninterruptedly for a period of ten full years; and the acceptance within the ten-year period of a lease from the owner of the record title by the one in possession is conclusive evidence that he does not hold adversely to said owner.

4. ——: ——: **Evidence: Contract to Perfect Title.** A contract by which a corporation agreed to perfect its title to land and defendant agreed to make it a loan thereon if it did so to the satisfaction of a title examiner, made before a conveyance had been made to the company or it had taken possession, is not color of title, but it shows, if anything, that the company did not then claim title.

Appeal from Carter Circuit Court.—*Hon. E. P. Dorris,* Judge.

AFFIRMED.

*J. W. Chilton* for appellant.

(1) Where one claims land by adverse possession and limitation the question of fact as to his actual possession, and of its continuity for the requisite period of time, as well as actual possession of those under whom he claims, and the character of such possession, are questions of fact to be determined by the triers of fact in the case. If before a jury the jury determines the facts, under instructions of the court. If a jury is waived, the judge becomes the trier of the facts, and in either case the parties, or either of them, has a right to a determination or finding of the facts in the case. It is always reversible error for the court to take from the jury its function of deciding the facts of a case by instructions which do not declare the law; so likewise is it error for a trial judge to take from himself the function of passing upon the facts of a case through an erroneous conception of the law. Cousins v. White, 246 Mo. 296, 307; Crossett

v. Farrell, 209 Mo. 704, 707; Barth v. Railroad, 142 Mo. 548; Farrar v. Heinrich, 86 Mo. 529. (2) One in actual possession of land as the agent or tenant of another cannot convert his occupancy of such land into an adverse tenancy by attornment to a stranger or third person. Sec. 6882, R. S. 1919; Farrar v. Heinrich, 86 Mo. 521, 531; McCartney v. Auer, 50 Mo. 395, 396; Merchants Bank v. Clavin, 60 Mo. 562. (3) After title has been vested in a claimant by limitation the mere recognition by the owner by limitation of the former owner's title, or the waiving of the Statute of Limitations, will not re-vest title in the former owner. Allen v. Mansfield, 82 Mo. 688, 694.

*J. L. Huett* and *O. L. Munger* for respondents.

SMALL, C.—Suit to quiet title to the southeast quarter of Section 14, Township 25, Range 3 East, in Carter County. The only question in the case on this appeal is whether there was any evidence tending to prove that defendant, M. J. Lavat, had title thereto by virtue of the ten-year Statute of Limitations. It was admitted at the trial that the plaintiffs had the record legal title under patent from the United States.

The evidence of the claim and possession of defendant was as follows: On March 26, 1907, he agreed to make a loan on said property to the Homestead Orchard Company, provided it perfected its title thereto to the satisfaction of his attorney. At the time the agreement was made on March 26, 1907, the Homestead Orchard Company had no deed or title to the property. But defendant offered deeds relating to said property, as follows: Quit-claim deed from Cornelia E. Bull and others to R. J. Winsor, dated October 14, 1907, recorded February 1, 1908; warranty deed from Rebecca J. Winsor and husband, William S., to Homestead Orchard Company, dated October 19, 1907, recorded February 1, 1908; deed of trust from said Homestead Company to Boaz, trustee for M. J. Lavat, appellant, dated February 15,

1908, recorded March 7, 1908, to secure note of said company to said Lavat for $4,000; second deed of trust by said company to Calfee, trustee, for said Lavat, dated March 2, 1909, recorded March 12, 1909, to secure another note to him made by said company for $2000; sheriff's deed in foreclosure of said last-mentioned deed of trust, conveying the interest of William S. Winsor and George Layman, trustees of said Orchard Company, and the interest of said Orchard Company to said Lavat, dated October 29, 1919, recorded November 8, 1919; a deed from said Orchard Company to Western Tie & Timber Company, dated October 13, 1910, recorded October 20, 1910, purporting to convey the timber on said land.

Appellant Lavat testified: He made the loan secured by said deeds of trust in good faith, believing that the title was vested in said Homestead Orchard Company. Including the land in controversy, said deeds of trust conveyed about 880 acres of land. He bought it in under foreclosure of his second deed of trust after William S. Winsor, who was president of said Orchard Company during its legal existence, and trustee for it under the statute afterwards, had left the country. On October 28, 1919, he took possession and has remained in possession ever since, living upon and cultivating the land. Cross-examination: He had no possession before said October 28, 1919, when he bought the property in under foreclosure of his second deed of trust. Before that, William S. Winsor had been in possession—he was an officer of said Orchard Company—president. Witness claimed title under said Winsor as a representative of said Orchard Company. The company was composed of three stockholders, George Guthrie and Rebecca Winsor, wife of said W. S. Winsor, and said W. S. Winsor. He thought W. S. Winsor looked after and transacted all the business for said Orchard Company.

R. J. Shoat testified for defendant: He rented the whole 880 acres, including the quarter section in controversy, from appellant Lavat about the time Lavat got his sheriff's deed in October, 1919. He occupied and cul-

tivated the land or had it cultivated. From about 1901 to about 1907 his father cultivated about fifteen acres of the land in suit. After October 14, 1907, his father did not cultivate the land any more, but Winsor cultivated it at one time, and when Winsor did not cultivate it, he had it done. Winsor also fenced it. Witness worked for Winsor in the year 1909 and cultivated the land for him. Could not say whether Winsor cultivated it every year from the time Winsor bought it up to the time Lavat bought it, but it was in Winsor's possession. Winsor lived there on the adjoining property. Winsor left along in 1918. After Winsor left, William Davis occupied it. Davis was there just a few months from early part of the spring, and left in the fall; he made a crop. After Davis left, witness took possession; that was about three years ago. The Homestead Company was known at that time, Winsor represented that company. Witness was employed for the company through him. The fences have been kept up around the place since Winsor took possession in the fall of 1907. "Q. Winsor did all the business, transacted it just as an individual? A. No, sir; Mr. Winsor was there at home all the time and Mr. Guthrie took his place part of the time." Witness had been in possession for the last three years. For the last two years he claimed under appellant, Lavat. Prior to that time, he claimed under Jim McGhee. McGhee did not claim to own the land. Three parties had been in possession of the land, Winsor, William Davis and the witness. Witness first came into possession about the first of November, 1918. He got a permit to move on from Jim McGhee. He went there under McGhee, but McGhee told him he had no title and no right to give possession. He said he had no authority over the place. "Q. He was looking after this place, you understand? A. But he said he had no right to rent the place."

Plaintiffs' testimony in rebuttal:

Garry H. Yount testified: He was an attorney at law. Knew W. S. Winsor and five or six years ago repre-

sented plaintiffs, Lizzie H. Hall and Addison Husted. At that time had a conversation with William S. Winsor with reference to Winsor taking a lease for the property from the plaintiffs. Witness wrote the lease, it was executed and dated the first day of September, 1917. He signed the lease as agent for Mrs. Hall and Mr. Husted and mailed it to Winsor. Discussed the matter with Winsor before he wrote the lease and after Winsor had signed it and returned it to him. Winsor was then in charge of the Homestead Company. He told witness that a year or two prior to the date of the lease he intended to buy a quarter-section owned by other parties of the same name and a different branch of the family of Husted, and he thought he was getting title to the other tract. Witness wrote and got the lease signed for Mrs. Hall and Mr. Husted, the plaintiffs.

The lease to Winsor and signed by him and plaintiffs, through witness as their agent, was 'as follows:

"This agreement of Lease made and entered into this first day of September, 1917, by and between Lizzie H. Hall and Addison S. Husted, parties of the first part, and William C. Windsor in the County of Carter and State of Missouri, party of the second part, Witnesseth:

"That the said parties of the first part have rented and leased and by these presents do lease unto the said party of the second part, for the years 1918 and 1919, the following described lands situated in Carter County, Missouri, to-wit:

"The Southeast Quarter of section Fourteen (14), Township Twenty-five (25), Range Three (3) East, for the sum of thirty-five dollars per year to be paid, thirty-five dollars Nov. 1, 1918, and thirty-five dollars Nov. 1, 1919.

"It is further mutually agreed between the parties that the said party of the second part is to keep all fences in repair, remove no timber except down timber that may be used for fire wood, and to not pasture said lands when wet and is to deliver to the said parties of the first part peaceable possession of said land on the first day of January, 1920, at which time this lease is to terminate.

"In witness Whereof, the said parties have hereunto set their hands the day and year first above written.

"Lizzie H. Hall,

"Addison H. Husted By

"Garry H. Yount, Their agent. Party of the First Part.

"Wm. S. Winsor, Party of the Second Part."

Cross-examination: The Homestead Orchard Company was an incorporated company under the laws of Missouri. It lost its charter about 1913 or 1915 through failure to comply with the State laws. The lease from Husted (and Mrs. Hall) was made in September, 1917, after the Homestead Orchard Company had ceased to exist and Winsor was acting for himself at that time. Redirect-examination: He (Winsor) was remaining on the premises at that time. He was living on the Homestead Orchard Tract at the time he signed the lease. Don't know how long he remained there until he went away. He has been gone something like three years. W. S. Winsor was in possession of this land at the time the lease was executed.

R. J. Shoat, re-called by defendant, testified: Winsor left the premises after Christmas—January or Februrary, 1918—and has never been back.

Defendant also offered in evidence the original files in the suit of M. J. Lavat against Homestead Orchard Company, a corporation, filed March 14, 1918, in which W. S. Winsor is sued as trustee for the company. Abstract recites: "It shows the company was out of commission at that time."

Plaintiffs then introduced in evidence the contract heretofore referred to, dated March 26, 1907, by which defendant, Lavat, agreed to make the loan secured by the first deed of trust. Also, a sheriff's deed to Jim McGhee, dated January 12, 1918, recorded January 12, 1918, from the sheriff, acting trustee, foreclosing a third deed of trust on said property given by said Homestead Orchard Company to secure money borrowed by it.

The case was tried by the court sitting as a jury, jury having been waived. At the close of the evidence defendant, Lavat, asked the court to give the following instructions, which were refused, and defendant excepted:

"1. The court declares the law to be that the agreement between Homestead Orchard Company and M. J. Lavat, of date March 26, 1907, recorded in Book Y, page 497, deed records of Carter County, Missouri, as well as

deeds and other instruments of title introduced by defendant upon the trial of this cause, constituted claim and color of title in and on behalf of Homestead Orchard Company, to the land in controversy; and if the court shall find that Homestead Orchard Company took actual possession of said land under and by virtue of said claim of title and held the actual, notorious, continuous and adverse possession thereof for a period of ten consecutive years, then under the law the title to said land became vested in Homestead Orchard Company, or its successors in interest if it ceased to exist as a legal entity, and the sheriff's deed to defendant of date October 29, 1919, would pass the title to said land to defendant, and the finding of the court must be for the defendant, M. J. Lavat.

"2.   The court declares the law to be that if William S. Winsor was an agent, tenant or employee of Homestead Orchard Company and was placed by it in the actual possession and charge of the land in controversy for the purpose of cultivating the said land, and that if said Homestead Orchard Company ceased to function as a legal entity by reason of having its charter forfeited by the State of Missouri, after which said William S. Winsor by reason of being the president of said Homestead Orchard Company was the trustee of the stockholders thereof to conserve, care for and protect the property belonging to them as such stockholders, as successors in interest to Homestead Orchard Company, and as such trustee was in the actual possession of the land in controversy and cultivating the same at the date of September 1, 1917, then said William S. Winsor could not attorn to the plaintiffs or any other person strangers to the title under which said Winsor then held possession of the land, and the copy of lease introduced in evidence by plaintiff, purporting to have been executed by William S. Winsor, did not constitute a change of the possession of said land, nor constitute a breach of the continuity of the possession thereof by the Homestead Orchard Company or its suc-

cessor in interest or legal successors, the stockholders of said company.

"3. The court declares the law to be that if it finds that Homestead Orchard Company, under whom defendant claims title to the land in controversy, held actual adverse possession of the land in controversy after acquiring claim of title thereto, through William S. Winsor, as its tenant or employee, who actually resided upon the land and cultivated it, and that said William S. Winsor continued to reside on said land as trustee for the stockholders of the defunct Homestead Orchard Company after it ceased to have legal existence until early in January, 1918, then the law presumes that the possession of said land by said William S. Winsor continued to be the possession of the stockholders of said Homestead Orchard Company so long as it was held by said William S. Winsor, and in order for plaintiffs to prove that the possession of said Homestead Orchard Company stockholders had been broken or interrupted by the signing of said lease by said Winsor it devolves upon plaintiffs to prove that the act of said Winsor in signing said lease was the act of said Homestead Orchard Company stockholders and was authorized by them."

"4. The court declares the law to be that if the possession of the Homestead Orchard Company of said land, or of the stockholders of said company as legal successors of said company, held through William S. Winsor, as its or their tenant or employee in actual possession of said land, was open and adverse to the plaintiff up to the time of signing of said lease by said Winsor, then the signing of said lease by said Winsor did not change the character of said possession of said Homestead Orchard Company or its successors."

No other instructions were asked or given, and the court found a verdict and rendered judgment for the plaintiffs. Failing to obtain a new trial, the defendant, Lavat, appealed.

I. We hold, that appellant's declarations of law, numbered 2, 3 and 4 were all properly refused, because

they were all based upon the hypothesis that even after the Homestead Orchard Company had ceased to exist and its charter had been forfeited by the State, its president, W. S. Winsor, could not under any circumstances shown in evidence, because he was trustee for such corporation give up or abandon the possession of said property to the plaintiffs, the true owners, although title had not vested by adverse possession in said company or its trustees and they had no interest therein.

Our statute, as to who shall be trustees, and their duties and powers upon the dissolution of a corporation, Section 9755, Revised Statutes 1919, provides as follows:

"Upon the dissolution of any corporation already created, or which may hereafter be created by the laws of this State, the president and directors or managers of the affairs of said corporation at the time of its dissolution, by whatever name they may be known in law, shall be trustees of such corporation with full powers to settle the affairs, collect the outstanding debts and divide the moneys and other property among the stockholders, after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them; to sue for and recover such debts and property by the name of the trustees of such corporation, describing it by its corporate name, and may be sued by the same; and such trustees shall be jointly and severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall come into their hands."

It is true, that under said section, the president and directors of a corporation upon its dissolution become trustees and its real estate vests in them as such trustees for the benefit of its creditors and stockholders. [Richards v. Coal & Mining Co., 221 Mo. 149.] But the statute not only makes them trustees and invests them with the legal title, but gives such trustees full power to settle the affairs of the corporation, to dispose of its property and to sue and be sued in their own name as trustees of such corporation. There is evidence, in this case, that the

Orchard Company between the years 1913 and 1915 became dissolved and forfeited its charter for violation of law. That the company only had three stockholders, William S. Winsor and his wife, Rebecca J., and George Guthrie. As the statute requires three directors, the presumption may be indulged that they were the directors of the corporation. There are circumstances and evidence tending strongly to show that the physical possession of the property in question, especially at the time said W. S. Winsor accepted the written lease therefor from the plaintiffs, was solely in said W. S. Winsor, the president of the company, who remained in possession under said lease until January or February, 1918. Said lease was taken on or about the 1st day of September, 1917, and its effect, if valid, was to disclaim adverse possession and to abandon or surrender possession of the property to the plaintiffs at that time. The deed to the Orchard Company for the property made by Mrs. Winsor and her husband was dated October 19, 1907, and was recorded in February, 1908. The date of the deed to Mrs. Winsor by Cornelia E. Bull et al., was October 14, 1907. There is no evidence that either Mrs. Winsor or her grantors were ever in possession of the property, or that said company was ever in possession prior to October 19, 1907, the date of its deed. So that when said Winsor accepted a lease from the plaintiffs for said property ten years had not elapsed from the date when the Orchard Company first took possession and claimed to own the property. It is admitted by appellant that the plaintiffs were the owners of the property, unless their title was divested by the adverse possession of the Orchard Company and its trustees or trustee. Consequently, the plaintiffs were still the owners of the property and the title to it had not vested by the lapse of time or adverse possession in said company or its trustees when they made the lease to said W. S. Winsor. It is true, that if the Statute of Limitations had run, so that said company or its trustees had become the owners of said property at the time said lease was accepted by said Winsor, he could

not have destroyed such title by surrendering possession to the plaintiffs, because title would have been perfect in such trustees, and they could not have divested themselves of it, as against the stockholders and creditors of the defunct corporation, except by a conveyance for a valuable consideration. But no title had yet vested in said company or said trustees when said Winsor disclaimed holding adversely and surrendered possession to plaintiffs by accepting said lease. As we have seen, the trustees of a corporation after its dissolution have full authority and power under the statute to settle the affairs of the company and dispose of its property. They, therefore, had a right to surrender or disclaim holding adversely possession of property not owned by the company or themselves as trustees, but previously held adversely, to the rightful owners, before such owners were barred by the Statute of Limitations, the same as the company itself would have had—which also held its property as a trust fund for its creditors and stockholders. Neither the trustees nor the company owned the property, and they had no right to keep it without rendering themselves liable to plaintiffs for damages after demand made therefor. They, therefore, had the right and power, as such trustees, to "settle with" the plaintiffs "their adversaries, quickly whilst they were yet in the way with them" by surrendering possession of said property or acknowledging their holding was not adverse.

We further hold, that the evidence tending to show that said W. S. Winsor, the president of said company, was the only trustee or person in possession thereof, he had a right to disclaim holding adversely and to surrender such possession to the plaintiffs without the joinder of the other trustees. Also, that the evidence failing to show any objection on their part, under the circumstances shown in evidence, it tends to show that they consented thereto. It may be, that had said Winsor remainded in *adverse* possession of said property until the ten years from the date of the Orchard Company's deed had expired, his possession would have been tacked onto that of

the company and the title would have inured to the benefit of the creditors and stockholders of said company. But the acceptance of said lease from plaintiffs was evidence, indeed, conclusive evidence, that neither he, nor any other person, held such possession *adversely* to plaintiffs for that length of time. The possession must be adverse and hostile to the true owner continuously and uninterruptedly for the full ten years required by the statute to deprive him of his title. The lower court did not err, therefore, in refusing said declarations 2, 3 and 4.

Appellant's declaration of law numbered 1 was properly refused, because the contract dated March 26, 1907, by which said company agreed to perfect its title to said property and appellant agreed to make it a loan of $4000, if it did so to the satisfaction of the title examiner, was not color of title in said company. If anything, it shows said company did not claim title at that time, but expected to get title. Besides, there was no evidence of possession of said property by said company under said claim as predicated in said declaration, but only after October 19, 1907, the date of its deed from the Winsors.

Finding no error, let the judgment be affirmed. It is so ordered. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of the court. All of the judges concur.