A. M. KNAPP et al., Appellants,

v.

C. W. STYER et al., Appellees.

No. 16429.

United States Court of Appeals
Eighth Circuit.

July 11, 1960.

Alan L. Austin, Watertown, S. D., for appellants. Irving A. Hinderaker and W. A. Hackett, Watertown, S. D., on the brief.

Stanley E. Siegel and Joseph H. Barnett, Aberdeen, S. D., for appellees. Hugh Agor and Douglas W. Bantz, Aberdeen, S. D., on the brief.

Before SANBORN, MATTHES, and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

This damage suit grows out of a collision between the front end of a motor tractor unit owned by appellee C. W. Styer which was being driven by appellee Henry Abel (sometimes referred to as "plaintiffs"), and the rear end of a stalled truck owned by defendants A. M. Knapp and Norman L. Langbehn, which their employee, defendant Howard Haigh had been operating. Styer recovered a verdict and judgment for property damage, including loss of use of his tractor unit, and Abel recovered for the personal injuries he sustained. Defendants have appealed and present and argue three points. One, the trial court should have directed a verdict for defendants because Haigh was not guilty of any negligence; two, plaintiff Abel was guilty of contributory negligence as a matter of law which precludes recovery by him; three, the court committed prejudicial and reversible error in permitting evidence to be offered and received that Styer had been damaged by loss of use of the tractor and in submitting this issue to the jury.

■ Jurisdiction is based upon diversity of citizenship and the amount involved. Inasmuch as the collision occurred in South Dakota, the law of that state applies.

■ In resolving points one and two, we have in mind that it is not our function, as a reviewing court, to weigh the evidence or substitute our judgment for that of the jury, which had the right to resolve disputed facts in favor of the plaintiffs, and upon review, all factual conflicts will be resolved in plaintiffs' favor and we will likewise accord them the benefit of every fair and reasonable intendment that the evidence will justify. Johnson v. Hill, 8 Cir., 274 F.2d 110, 112. So viewing the evidence, it was sufficient to establish the following:

On the night of April 30, 1959, defendant Haigh, as an employee of the defendants Knapp and Langbehn, was operating a truck loaded with farm machinery in a westerly direction on Highway No. 212 in Spink County, South Dakota. Around midnight, the right rear dual wheels suddenly separated from the axle housing and dropped off the vehicle, and Haigh immediately stopped his truck upon the pavement. At that point Highway 212, surfaced with "blacktop," was 24 feet wide, and had two lanes for traffic. The truck came to a stop in a diagonal position with its left front end further to the north of the center line than the left rear portion, which was resting on the center line of the pavement. Parts of the farm machinery extended or projected out of the rear of the truck between 3 and 4 feet and into the south lane of the highway normally used for eastbound traffic. Although the box of the truck was white, there was no tail gate, the back was open, and by reason of the cargo of machinery, the truck and its load, viewed from the rear, tended to blur into the landscape.

About 4 o'clock A.M. on May 1 (same night), plaintiff Abel was traveling west on Highway 212, at a speed of 50 m. p. h., driving a diesel truck-tractor, pulling a tandem trailer with a load of roofing material. When he reached a point between 200 and 300 feet east of defendants' abandoned truck he met an oncoming motor vehicle. Abel dimmed the

lights on his tractor, but the eastbound vehicle did not, causing some slight interference with Abel's vision. Right after the two vehicles met and passed each other, Abel restored his lights to high beam, and then saw, for the first time, a dark object on the highway between 100 and 200 feet ahead of him. He reduced his speed to 30 m. p. h. and started to turn to the left, intending to pass the object. However, a portion of the machinery which extended from the rear of the truck and across the center line came into contact with the front end of Abel's tractor, causing it to collide with the rear end of the stalled truck.

Reverting to Haigh's actions following the breakdown of his truck, he testified that his truck became disabled at about 12 o'clock or midnight; that he placed three reflector-type flares around the truck—one about 150 feet ahead or to the west of the truck; one beside the truck and near the center line, and another about 150 feet to the east or behind the truck; that he then left his vehicle on the highway with parking and tail lights burning, and went to a gas station in Redfield, South Dakota, about 7 miles away, where he contacted his wife by telephone and requested her to come after him; that he waited at the station until about 1:30 A.M., when his wife arrived; that they returned to his truck, he relocated the reflectors by moving the east and west ones further from the truck, and they then proceeded to Wessington, South Dakota, about 46 miles away, where he secured necessary equipment and help. By the time he returned to his truck, around 5 A.M., the collision had already occurred. It further appears that Haigh did not seek aid in Redfield, although several wrecking services were available to him there.

Abel testified positively that he saw no lights, flares or reflectors before the collision; that he was looking straight ahead, he was alert, and his vision was good. His testimony as to the absence of flares to the rear of the truck was corroborated by a member of the South Dakota highway patrol who made a careful investigation of the collision shortly after it occurred and no flare was ever discovered to the rear of the defendants' vehicle.

Other pertinent evidence will be considered in disposing of the issues presented.

Plaintiffs' case was submitted upon the theory that although a disabled vehicle may temporarily be left unattended on the highway, and the highway used for making emergency repairs, there is a duty to obstruct traffic as little as possible and not to unnecessarily endanger others. In addition, the jury was instructed that whenever a vehicle is stopped or parked upon the highway, after sunset, lamps must be set out to the front and rear of such vehicle, visible at a distance of 500 feet. [S.D.C.Supp. 44.0353, 44.0354].

As to Haigh's statutory duty to set out flares, Section 44.0354 of the Supplement to the South Dakota Code of 1939, as amended by Chapter 235 of the Session Laws of 1953, provides:

"Every operator of a motor truck, * * * shall, immediately upon bringing his vehicle or vehicles to a stop upon the traveled portions of any public highway at any time after sunset and before sunrise, * * * place two flares, or electric lights or reflectors properly lighted, one at least one hundred feet in the front, and one at least one hundred feet to the rear of such vehicle or vehicles, which flares, electric lights or reflectors shall be of such type of construction as will furnish continuous light for a period from sunset to sunrise at all times of the year."

Defendants interpret this statute to mean that "it (is) negligence per se to leave a truck parked on the highway, at night, without the required flares," but insist that they fully complied with the requirements of the statute, and hence are not faced with the dilemma of one who has failed to comply. The fatal weakness of defendants' position obviously emanates from their failure to give

any credence to evidence favorable to plaintiffs, from which the jury could, and apparently did, find that Haigh negligently failed to place a flare 100 feet to the rear of the stalled truck. Defendants would have us close our eyes to the favorable evidence rule and consider only the evidence which supports defendants' theory. Quite obviously, the question of whether the flares were placed as required by the applicable statute, was a disputed one for the jury to resolve.

█ As to defendants' negligence in unreasonably obstructing the highway,[1] the jury was instructed to consider "(1) Whether the driver acted expeditiously and with reasonable promptness to obtain the removal of the parked vehicle from the travelled portion of the highway; (2) the means available to the driver to assist him in removing the parked vehicle from the highway; (3) all other relevant and material surrounding facts and circumstances." Under the facts and circumstances heretofore recited, there was ample evidence from which the jury could find that Haigh by failing to report his breakdown or to seek help in nearby Redfield, negligently failed to act "expeditiously and with reasonable promptness" in obtaining the removal of his truck from the travelled portion of the highway, where it obstructed traffic. See and compare, Descombaz v. Klock, 58 S.D. 173, 235 N.W. 502, 504; Frager v. Tomlinson, 74 S.D. 607, 57 N.W.2d 618;

Plumb v. Burnham, 151 Neb. 129, 36 N. W.2d 612, 618, 619.

█ Defendants' second point, the contributory negligence of Abel,[2] must be determined under South Dakota's comparative negligence statute [S.D.C.Supp. 47.0304–1 (1952)], which provides:

"In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

██ The South Dakota courts have recognized that this statute was adopted from an identical Nebraska statute, and on at least two occasions this court has exhaustively considered the statute and judicial interpretations thereof by the Supreme Courts of Nebraska and South Dakota. Nothing that we might say here can add clarity or understanding to our expressions in Audiss v. Peter Kiewit

1. S.D.C. § 44.0324 (1939) provides:
   "Stopping on highway. No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; provided in no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of such highway opposite such standing vehicle shall be left for free passage of other vehicles thereon. * * *.
   *   *   *   *   *

"The provisions of this section shall not apply to the driver of any vehicle which is disabled while on the paved, improved, or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and *temporarily* leaving such vehicle in such position." (Emphasis supplied.)

2. Abel's alleged negligence is relevant only as to *his* right to recover. The tractor unit which he was driving, owned by plaintiff Styer, had been leased to Abel's employer, B. F. Nelson Manufacturing Company. The jury was instructed that Abel's negligence, if any, would not be imputed to Styer and Styer's claim for property damage would not be prejudiced by the acts of Abel.

Sons Co., 8 Cir., 190 F.2d 238, and Chicago & North Western Railway Co. v. Bork, 8 Cir., 223 F.2d 652. In summary, it may be said that the statute is limited in its application to cases in which the evidence warrants the inference that plaintiff was guilty of no more than slight contributory negligence and the former doctrine that contributory negligence on the part of a plaintiff will bar his recovery is not entirely abrogated. As so often true, each case must be determined upon its own particular facts and there is no exact rule or standard that can be fixed in applying the statute. See Roberts v. Brown, 72 S.D. 479, 36 N.W.2d 665, 667.

The factual situation in Audiss bears striking resemblance to the instant case. There, the trial court sustained the motion of defendant for a directed verdict, apparently being of the opinion that notwithstanding the South Dakota comparative negligence statute, the dismissal was required because plaintiff's decedent was guilty of contributory negligence. This Court reversed and remanded, holding that the evidence was insufficient to conclusively establish that decedent's conduct constituted more than "slight negligence" as a matter of law, and that it was for a jury to determine whether plaintiff's decedent acted with want of ordinary care.

In Winburn v. Vander Vorst, 75 S.D. 111, 59 N.W.2d 819, the Supreme Court of South Dakota again had occasion to discuss the difficulty of applying the comparative negligence statute, stating, 59 N.W.2d at page 822: "To draw the line on cases where contributory negligence is shown as a matter of law has been a difficult problem for courts. To refine the inquiry to the point where negligence is found as a matter of law but is recognized as only 'slight' according to the measure of the jury, presents difficulties of the same kind but on a magnified scale." There, defendant's unlighted truck had stopped upon the highway under circumstances warranting a finding of negligence; the evidence indicated that the plaintiff, travelling 40–50 m. p.

h., had his lights on low beam due to approaching vehicles, and did not immediately see the truck. The court ruled, 59 N.W.2d at page 821: "the comparatively late discovery of the danger, the quick and pursued decision to stop rather than go around, and the car aproaching from the other direction placed (plaintiff's) failure to go around well within the measure of 'slight negligence' as applied by the jury."

Here, as we have seen, the back end of the truck was open, it was filled with machinery, and some pieces projected out over and across the center of the highway. The appearance of the vehicle, at the time of the collision, was described by Abel in these words: "It was just a black mass there when I first saw it. I didn't think it was another vehicle at first. I did not know it was something I had to go around." Haigh, in describing the appearance of his vehicle, stated: "When you looked at the truck after it was loaded from the rear, you could see the cargo and machinery, that is you could see it and through it." In view of the circumstances surrounding the scene of the collision, it seems reasonable to say that at night the truck, with its load, sitting at an angle in the highway, would be without a sharply delineated form, and, at best, would tend to present a somewhat confusing outline to one aproaching it from the rear. As we stated in Audiss, supra, 190 F.2d at page 242: "No one would hold a driver to the duty of seeing an object that was perfectly camouflaged on the road within range of his vision, and, on the other hand, no court could excuse a driver for not seeing an object which was brilliantly lighted up and readily apparent in the road ahead of him."

In Dwyer v. Christensen, 76 S.D. 201, 75 N.W.2d 650, 56 A.L.R.2d 734, defendant's dark green vehicle had stalled at an angle on the highway, so that its reflectors and lights were out of the vision of the approaching plaintiff, who was temporarily blinded by the lights of an oncoming vehicle. In ruling that it could not say as a matter of law that plaintiff

**390**

was guilty of more than slight negligence, the Court observed, 75 N.W.2d at page 654: "It is reasonable to believe that the color and position of the car would tend to make it difficult to discern on a black top highway. *This fact is of importance in determining whether plaintiff's negligence was slight or otherwise.* If an object is so well camouflaged as not to be discernible within the range of a driver's vision he may not be held to the duty of seeing it." (Emphasis supplied.)

The evidence here indicated that Abel was looking straight ahead prior to the collision, his vision was good, he was mentally alert, and as soon as he observed the dark object on the highway, he reduced the speed of his vehicle and turned to the left. It further appears that he would have avoided a collision, but for striking a piece of the machinery which extended from defendant's truck, over the center line. Under these circumstances, we cannot say as a matter of law, that Abel's conduct was more than slightly negligent, and the jury could properly conclude that it was not. It can hardly be gainsaid that the evidence was sufficient to justify a finding that defendants' negligence was gross in comparison. To permit a motor truck to remain standing on a heavily travelled highway at night, without adequate flares to protect other motorists would be gross in comparison to Abel's negligence in failing to avoid the collision after he discovered the peril.

Defendants' third contention is focused upon the amount of damages to which plaintiff Styer is entitled. There was uncontradicted evidence that as a result of the collision, the tractor was rendered a total loss, having only a salvage value of $800. The trailer, although extensively damaged, was repaired. Over the objection of defendants, Styer offered evidence affording proof that it required, after diligent effort on his part, a period of 47 days to obtain a replacement for the destroyed tractor. He testified that immediately after the accident, he contacted four or five dealers in the Minneapolis area in an effort to procure a replacement, "a tandem diesel capable of handling 70,000 pounds gross;" he finally was successful and the replacement was ready for use on June 16.

Alternative evidence was relied upon to establish the damages resulting from loss of use of Styer's equipment. The rental cost of a tractor and trailer for the 47 days would have been $4,305, whereas his net profits from loss of use of the tractor-trailer unit for the same period was $3,982.

The Court's instructions authorized the jury to compensate Styer for loss of use of the tractor and trailer during the time "necessarily consumed in repairing the damage caused by the collision, or if any part of the unit was beyond repair, for the time necessarily consumed in obtaining an adequate and comparable replacement." The verdict in Styer's favor for $10,000, when viewed in light of the evidence, demonstrates that the jury allowed recovery for loss of use of the tractor and trailer.

Defendants strongly urge that when damages are to be awarded for loss of a chattel which is totally destroyed, no further damages may be awarded for loss of use, citing such cases as Kohl v. Arp, 236 Iowa 31, 17 N.W.2d 824, 169 A.L.R. 1067; Magnolia Petroleum Co. v. Harrell, D.C.Okl., 66 F.Supp. 559; Kansas City Southern Railway Co. v. Frederick, Tex.Civ.App., 276 S.W.2d 332. It is true that many courts so hold, but, from our research, it is clear that this is by no means universal and there is a contrariety of opinions among the jurisdictions which have ruled upon this question. See collection of cases, Annotation 169 A.L.R. 1074, and Reynolds v. Bank of America National T. & S. Ass'n, Cal., 345 P.2d 926; Paguio v. Evening Journal Ass'n, 127 N.J.L. 144, 21 A.2d 667 (damages for lost income arising from loss of trained dog); Guido v. Hudson Transit Lines, 3 Cir., 178 F.2d 740 (applying New Jersey law—two year loss of income on destroyed truck and bulldozer); Buchanan v. Leonard, D.C. Colo., 127 F.Supp. 120 (commercial vehicle); Kopischke v. Chicago, St. P.,

M. & O. Ry. Co., 230 Minn. 23, 40 N.W.2d 834 (commercial truck).

The South Dakota damage statute, § 37.1901, S.D.C.1939, provides:

"Measure: general rule. For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Apparently this statute has not been applied to any situation comparable to that before us; however, in Overpeck v. City of Rapid City, 14 S.D. 507, 85 N.W. 990, the South Dakota court allowed special damages for expenses incurred in doctoring and caring for an injured horse for a period of 2½ months, in addition to general damages for diminution in value of the animal. The court there stated, 85 N.W. at page 991:

"The plaintiffs were entitled to recover such an amount as would compensate them for all loss which directly resulted from the wrong done them. * * * The difference, therefore, in the value of the horse before the injury and after it was cured was only a part of the damage sustained by the plaintiffs, and for which they were entitled to recover. No other rule would fairly compensate the plaintiffs for their loss."

In this connection, we observe that the Supreme Court of California, in Reynolds v. Bank of America National T. & S. Ass'n, supra, Cal., 345 P.2d 926, recently had occasion to apply a statute, identical to that of South Dakota, to facts very similar in principle to those before us. There, the Court, in ruling that damages for loss of use of a commercial airplane, during its replacement period, were properly an item to be recompensed, stated, at page 927:

"There appears to be no logical or practical reason why a distinction should be drawn between cases in which the property is totally destroyed and those in which it has been injured but is repairable, and we have concluded that when the owner of a negligently destroyed commercial vehicle has suffered injury by being deprived of the use of the vehicle during the period required for replacement, he is entitled, upon proper pleading and proof, to recover for loss of use in order to 'compensate for all the detriment proximately caused' by the wrongful destruction."

That Court quoted extensive authority for its holding, including the Restatement of Torts, § 927. See also, Annotation 169 A.L.R. 1074, at page 1094.

In our view, the circumstances here present indicate that plaintiff Styer suffered very real damages as a consequence of the deprivation of the commercial vehicle used in his trade and business, which he endeavored to mitigate in every way possible; the proof adduced provided ample foundation to support an award for these consequential damages, and no objection was made as to the *quality* of the proof fixing the amount of his lost profits. The South Dakota statute is very broad, and appears designed to cover "all the detriment proximately caused * * *." No South Dakota decisional law has been pointed out to us which would indicate that the courts of that state would disallow Styer's claim of loss under that statute. As we have so often observed, this Court will not substitute its judgment for that of the district court in ruling upon a doubtful question of state law, unless we are clearly convinced that the ruling resulted from misconception or misapplication of local law. See Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733.

Affirmed.