**NEW HAMPSHIRE FIRE INSURANCE COMPANY, of Manchester, New Hampshire, a Corporation, Appellant,**

v.

**VIRGIL & FRANK'S LOCKER SERVICE, INC., a Corporation, et al., Appellees.**

No. 16861.

United States Court of Appeals Eighth Circuit.

May 16, 1962.

Lewis W. Sanders, of Sanders & Niewald, Kansas City, Mo., made argument for appellant and filed brief.

James S. Formby, of Formby & Paden, Kansas City, Mo., made argument for appellee and filed brief.

Before SANBORN and MATTHES, Circuit Judges, and GRAVEN, District Judge.

MATTHES, Circuit Judge.

This appeal arises from a suit upon a contract of fire insurance instituted by the insured, Virgil & Frank's Locker Service, Inc.,[1] and Sam Mandacina, Joseph Mandacina, and Mike Mandacina, who were, by endorsement, insured as mortgagees of the property covered by the policy. The parties will be referred to in their capacities as plaintiffs and defendant. Jurisdiction rests upon diversity of citizenship and the amount in controversy.

Three main issues of defense were presented to the trial court: a) whether or not plaintiffs had an insurable interest in the property at the time of the loss; b) whether or not the fire was of incendiary origin; and c) whether or not there was a "total loss" of the insured property, both real and personal. During the trial the court ruled as a matter of law, that plaintiffs had an insurable interest, and only the issues of arson and damages were submitted to the jury. A verdict was returned against defendant and judgment was entered for plaintiffs in the sum of $33,000, the maximum coverage of the policy.

On appeal, the main issue involves the legal effect of a "corporate deed," purporting to convey the insured property, which was executed by Locker Service at a time when its corporate charter had been revoked by the State of Missouri. Defendant claims that the deed was valid and that the court erred in holding that plaintiffs' interest in the insured property had not been extinguished at the time of the loss. In this connection defendant urges that it was entitled to a directed verdict, or, in the alternative, that the trial court erred in refusing to submit this theory of defense to the jury by its proffered instruction No. 1. Before proceeding to a review of the law, it is first necessary to set out in more or less chronological order the factual situation leading to the controversy before us.

From the record it appears that Locker Service was a small, locally owned corporation, engaged in the frozen food locker business in the City of Sugar Creek, Missouri. There were three stockholders, Frank Mandacina, Virgil Braton and W. G. Williams. Braton was president of the corporation, Williams the secretary and Frank Mandacina filled the other offices of the corporation. These three men were also all of the directors of the corporation.

The policy in question issued to Locker Service on October 14, 1956, provided fire insurance on a two-story building owned by the named insured, in the amount of $24,000, and on the furnishings and fixtures in the building, in the amount of $9,000.

On January 1, 1959, pursuant to § 351.525 V.A.M.S.1949, the State of Missouri forfeited the corporate charter of plaintiff corporation due to its failure to file required antitrust affidavits. There was evidence to indicate that the business was closing out food locker operations, customers had been advised to re-

---

1. Sometimes referred to herein as "Locker Service."

move their food from the lockers, one or more bank accounts had been closed and only a small balance remained in another account. Plaintiffs' evidence indicated that following forfeiture of the corporate charter, the insured building was being remodeled and redecorated, and that negotiations were underway for lease of the building and equipment.

Plaintiffs, Sam, Joe and Mike Mandacina, brothers of stockholder Frank Mandacina, held a note of the corporation, secured by a deed of trust on the insured building. On *March 4, 1959*, a deed to the property was executed, and since it is the legal effect of this document which generates the lawsuit, it becomes necessary to describe it in some detail.

The document is entitled "Corporation Warranty Deed," and by its terms is an absolute deed and grant of the insured property by "Virgil & Frank's Locker Service, Inc." to the three Mandacina brothers who held the corporate note. After legal description of the premises, this statement appears:

> "Parties of the second part (the Mandacinas) required by this instrument to cancel any mortgage indebtedness due them by party of the first part (the corporation)."

This deed was executed by "Virgil & Frank's Locker Service, Inc. By Virgil E. Braton, President, and W. Gaylord Williams, Secretary." The corporate seal was affixed, and a standard "Missouri Corporation Acknowledgment" was taken before a Notary Public whereby Virgil E. Braton, as president, affirmed that the deed "was signed and sealed in behalf of [the] corporation by authority of its Board of Directors" and that the conveyance was the "free act and deed" of the corporation.

On *March 28, 1959*, and during the term of the policy, the insured building was destroyed by an explosion and fire, and on May 13, 1959, proofs of loss were submitted to defendant, executed in the name of the corporation by Braton, as president, with corporate seal affixed. The interest of Locker Service was described as being "fee simple title." This proof of loss was rejected on the ground that the corporation had no interest in the building at the time of the loss.

On June 3, 1959, pursuant to application, the State of Missouri rescinded the forfeiture of the corporate charter, and "Virgil and Frank's Locker Service, Inc." was once more a corporation in good standing. Amended proofs of loss were submitted to defendant, the same being signed by the three shareholders as officers and directors of the company and as trustees for the shareholders during the period of forfeiture.

On April 19, 1960, suit was filed by Locker Service in a state court to set aside the warranty deed described above, and on June 2, 1960, the Circuit Court of Jackson County, Missouri, entered its order setting aside the deed.[2] Upon continued denial of liability by defendant, the instant suit was filed.

 In determining whether or not the trial court erred in ruling that the warranty deed of March 4, 1959, was ineffective, null and void and conveyed no title from the corporation, we must first

2. The court's decree was as follows: " * * * that a purported Corporation Warranty Deed dated the 4th day of March, 1959, made, executed and delivered by defendants Virgil E. Braton and William Gaylord Williams * * * purporting to convey real estate * * *, has been since its execution and now is null and void ab initio; that said purported Corporation Warranty Deed was made, executed and delivered at a time when the corporate charter of Virgil and Frank's Locker Service, Inc., was forfeited by the Secretary of State of Missouri; was made, executed and delivered without authority of the board of directors of Virgil and Frank's Locker Service, Inc., and that there was no consideration whatsoever for said purported Corporation Warranty Deed; that said purported Warranty Deed did not convey or transfer any right, title or interest in or to the real property described therein, and that said purported Corporation Warranty Deed should be and the same is hereby set aside, held for naught, and adjudged and decreed to be of no force and effect whatsoever."

look to the statute involved. Section 351.525, V.A.M.S.1949, in pertinent part, provides as follows:

"*351.525. Corporate rights forfeited, when—trustees, powers*

"If any corporation shall fail to comply with the provisions of this chapter with respect to registration or the filing of said anti-trust affidavit * * * the corporate rights and privileges of such corporation shall be forfeited, and the secretary of state shall thereupon cancel the certificate, or license, of such corporation * * * whereupon all the powers, privileges and franchises conferred upon such corporation by such certificate * * * shall * * * cease and determine * * *; and the directors and officers in office when any such forfeiture occurs shall be the trustees of the corporation, who shall have full authority to wind up its business and affairs, sell and liquidate its property and assets, pay its debts and obligations and to distribute the net assets among the shareholders; * * *."

The courts of Missouri have had occasion to construe the terms of this statutory language, and have ruled that it effects a complete dissolution of the corporation as an entity—it ceases to exist. The issues in State ex rel. McDowell v. Libby, 238 Mo.App. 36, 175 S.W.2d 171, involved the validity of a judgment rendered against a corporation after its charter had been forfeited for failure to file an annual registration statement. In ruling such judgment to be void, the court stated, at p. 173 of 175 S.W.2d:

"A forfeiture of a corporation's charter by the Secretary of State for failure to comply with the laws of the state effects a dissolution of the corporation. The dissolution of a corporation is the termination of its corporate existence and its extinction as an entity or body."

As to a definition of this dissolution, in Leibson v. Henry, S.Ct.Mo., 1947, 356 Mo. 953, 204 S.W.2d 310, 315, involving liability for unemployment taxes accruing after charter of the corporation had been forfeited, the court quoted 16 Fletcher, Cyclopedia of Corporations, § 7966, as follows:

" 'The term, "dissolution," as applied to a corporation, signifies the extinguishment of its franchise to be a corporation and the termination of its corporate existence. It has been described as that condition of law and fact which ends the capacity of the body corporate to act as such and necessitates a liquidation and extinguishment of all legal relations existing in respect to the corporate enterprise.' "

See also, Bruun v. Katz Drug Co., S.Ct. Mo., 351 Mo. 731, 173 S.W.2d 906, 909; and State of Missouri v. A. B. Collins & Co., D.C., Mo.1940, 34 F.Supp. 550, which exhaustively reviews Missouri law on this issue. It is elementary that purported acts of a nonentity are without legal effect and that a corporation deed, executed while the corporation has no legal existence, is a worthless thing. Indeed, the Supreme Court of Missouri so held in Bradley v. Reppell, 1895, 133 Mo. 545, 32 S.W. 645, affirmed en banc, 34 S.W. 841. Bradley involved title to real estate, and the effect of a corporate deed executed after the corporation charter had expired by operation of general law. The court stated, 32 S.W. at p. 646:

"In such an event, (dissolution of corporation,) in this state, the title to its property is by statute devolved upon trustees for the settlement of its affairs and the distribution of its assets * * * and thereafter it has no power to make a legal contract or convey property in its corporate name and capacity."

It is thus clear that on March 4, 1959, no interest in property could be conveyed by the corporation, as such. Likewise, it is clear that the subsequent rescission of the forfeiture by the State of Missouri, in June, 1959, some three months later, did not in any way revive or legalize the action of the corporate entity in a retroactive manner so as to

give life to the warranty deed as the act of the corporation. See Clark Estate Co. v. Gentry, 362 Mo. 80, 240 S.W.2d 124, cert. den., 342 U.S. 868, 72 S.Ct. 109, 96 L.Ed. 653, where plaintiff relied upon such retroactive effect to save its suit, filed during a period of forfeiture, from the bar of the statute of limitations. The court stated, 240 S.W.2d at p. 129:

"* * * The words 'rescission,' 'rescind' and 'rescinded' in the statutes above referred to cannot be so interpreted. The rule is that, in the absence of clear legislative intent to the contrary, the effect of statutes is prospective only. * * * It is clear that the General Assembly did not intend that restoration of corporate powers, revivor of the right to operate as a corporation, recreation of the corporate legal entity should *wipe out* the period of suspension and legalize the unlawful acts of the dissolved corporation and of its officers and directors." (Emphasis of the Court).

In this setting, the crucial question is, did the deed of March 5, 1959, have any legal effect? Defendant strenuously insists that inasmuch as the rights of Locker Service as a corporate entity had, by operation of law, been forfeited, that § 351.525, V.A.M.S., supra, and Missouri cases, compel a holding that the deed be construed and interpreted as an effective conveyance by Virgil Braton and W. G. Williams, as a "majority" of the statutory trustees.

Under the facts and circumstances as shown by this record, the contention is without support in law. The instrument has every characteristic of a "corporation deed," and in all respects purported to be the act of the corporation. There is no indication from the instrument, or otherwise, that Braton and Williams intended to act as trustees in the execution of the deed. By affidavit, Braton certified that the execution of the conveyance was "signed * * * in behalf of said corporation by authority of its Board of Directors * * * and said instrument [is] the free act and deed of said corporation." In every word and phrase, the deed itself negates and refutes any contention that it was the act of the statutory trustees. By the law of Missouri, title to the property of the corporation, upon forfeiture of its charter, immediately vested in the trustees, and it was the trustees and *they only*, who had the legal right to effectively and validly transfer title to corporate property. See Jackson v. Rothschild, Ct. App., 1936, 99 S.W.2d 859, 860; Richards v. Northwestern Coal & Mining Co., 221 Mo. 149, 119 S.W. 953.

The authorities cited by defendant have been subjected to our careful consideration, and while we are in accord with the principles flowing therefrom, we regard them as distinguishable on the facts and consequently of no controlling importance.

In Manufacturers' Sav. Bank v. O'Reilly, 97 Mo. 38, 10 S.W. 865, 867, an assignment of corporate property of an insolvent corporation for the purpose of paying corporate debts was upheld, but of main import is the fact that there was no suggestion that the corporation had ceased to be an entity and the problem of statutory trustees and their title was not at issue.

Turner v. Browne, 351 Mo. 541, 173 S.W.2d 868, 872, may be distinguished inasmuch as the facts there indicated that, after an initial assignment of its assets by the corporation (which was void by reason of the forfeiture of the corporate charter prior to the date of the execution), the statutory trustees, *"as such trustees"* (emphasis supplied), conveyed all of the corporate real estate by deed, subject to the prior trust agreement entered into by the corporation.

Common Sense Min. & Mill. Co. v. Taylor, 247 Mo. 1, 152 S.W. 5, involved a sale of corporate property which had not been formally authorized by the board of directors, and the corporation was held to be estopped from rescinding the contract, by reason of "ratification" by the corporation and its directors. Again, there was no question as

to the corporate entity or its power to convey title.

Hall v. Lavat, 301 Mo. 675, 257 S.W. 108, also relied upon by defendant, and involving title to land, held that the act of the president of a corporation whose charter had been forfeited, in signing a lease with the true owner of premises, worked to break the chain of the corporation's title to the land through adverse possession. The court held that, after forfeiture of the charter, power lie in the statutory trustees to give up adverse possession of the property, and the court further held that the president of the company, the only trustee in possession of the property, had power to disclaim possession, observing that no other trustee made objection to such disclaimer. However, it is noted that the court stressed the fact that *title had not yet vested in the corporation* by lapse of time, and the court took occasion to observe, 257 S.W. at p. 111:

> "It is true that, if the statute of limitations had run, so that said company or its trustees had become the owners of said property at the time said lease was accepted by said Winsor, he could not have destroyed such title by surrendering possession to the plaintiffs, *because title would have been perfect in such trustees, and they could not have divested themselves of it * * * except by a conveyance for a valuable consideration.*" (Emphasis supplied).

And see Noe v. Headley, 118 Mo.App. 722, 96 S.W. 309, holding director personally liable to shareholder where two trustees of corporation, whose charter had expired, conveyed corporate property, as trustees, to a third trustee. The trial court held such deed to be void.

We are convinced that Judge Duncan, before whom the case was tried, and who is eminently competent to pass upon Missouri law, reached a permissible conclusion as to the legal effect of the purported deed. Mothner v. Ozark Real Estate Company, 8 Cir., 300 F.2d 617; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 733–734.

In view of this holding, it was not error to refuse defendant's instruction No. 1 which cast a defense based upon the theory of a valid conveyance by "a majority of the stockholders" and "a majority of the last Board of Directors."

Defendant also claims error in the trial court's failure to direct a verdict for defendant upon the theory that plaintiffs failed to prove a "total loss" of the personal property destroyed in the fire. It alleges that as to personal property, an insured is required to prove the difference in value immediately before and immediately after the casualty, citing State v. Cox, 307 Mo. 194, 270 S.W. 113. Specifically, defendant urges that although Locker Service offered evidence of the value of the property prior to the fire, no witness testified as to the condition of the contents of the building subsequent to the loss. While there was no evidence directed to the condition of any of the specific items of personal property located in the building subsequent to the fire, we must hold that the issue was properly submitted to the jury. It must be remembered that plaintiffs, as the prevailing parties, are entitled to have all disputed facts resolved in their favor and we must accord them the benefit of every fair and reasonable intendment that the evidence will justify. Knapp v. Styer, 8 Cir., 280 F.2d 384, 386; Johnson v. Hill, 8 Cir., 274 F.2d 110, 112. From the record it appears that the fire followed a violent explosion which threw one wall of the building some distance into the street; that the building continued to burn and smolder from the initial explosion on Saturday through Sunday; that no one could approach the locker plant until Monday, two days after the fire. One witness stated that it was impossible to go into some of the rooms because walls were destroyed, the roof had fallen into a part of the building, and the entire premises were in a dangerous condition. This witness stated that all he was able to recover were some wet clothes and a few personal pictures which were "all burned." We also note that photographs introduced in evi-

dence indicate that the explosion and fire caused severe and extensive damage to the interior and exterior of the building. We are satisfied that there was probative evidence from which the jury could legitimately infer that the contents of the building were totally destroyed. Plaintiffs' witness testified to the items of personalty in the building just prior to the fire, and fixed their value at $14,094.55. In allowing a total loss recovery, the verdict was limited to the maximum coverage of the policy, which was $9,000.

Finding no error we

Affirm.